274 N.J. Super. 47 (1994)
643 A.2d 34
FRANKLIN TOWNSHIP BOARD OF EDUCATION, PLAINTIFF-RESPONDENT,
v.
QUAKERTOWN EDUCATION ASSOCIATION, WALTER M. HOWELL, BARBARA PIANO, DONNA BROWNING, BARRY KRAMER, AND ALL INDIVIDUAL MEMBERS OF THE QUAKERTOWN EDUCATION ASSOCIATION WHO HAVE ENGAGED IN OR ASSISTED IN AN ILLEGAL STRIKE AGAINST THE FRANKLIN TOWNSHIP BOARD OF EDUCATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1994.
Decided June 10, 1994.
*50 Before Judges KING, ARNOLD M. STEIN and ARIEL A. RODRIGUEZ.
Stephen E. Klausner argued the cause for appellants (Klausner, Hunter, Cige & Seid, attorneys; Mr. Klausner of counsel and on the brief).
Philip E. Stern argued the cause for respondent (Rand, Algeier, Tosti & Woodruff, P.C., attorneys; Robert M. Tosti, of counsel; Joseph R. Morano on the brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Defendants, Quakertown Education Association, a school union, and its officers and employee members appeal from the order of the Chancery Division, awarding strike-related expenses to Franklin Township Board of Education. We affirm in part and modify the monetary award. We hold that in a case involving an action by a public body against its striking employees and their representative:
*51 1. An award of counsel fees to the prevailing party pursuant to R. 1:10-5 is limited to those legal fees and costs incurred in obtaining relief from that conduct of the opposing party which is in violation of a litigant's rights; and
2. Other non-attorney strike-related expenses, such as the cost of substitute personnel for striking public employees, may be awarded pursuant to a claim by the public body for damages arising from violation of the common law duty prohibiting strikes by public employees. The matter should be handled as a summary proceeding pursuant to R. 4:67-2(b); and
3. Pursuant to R. 1:10-5, the trial judge may impose additional monetary sanctions against striking public employees and their representatives, to continue in effect until there is compliance with the court order which is being violated.
On May 15, 1992, following the breakdown of contract negotiations, Franklin Township's school teachers and supporting personnel went on strike. That day, the chancery judge issued a temporary restraining order requiring the employees to immediately return to work. In addition to injunctive relief, plaintiff's verified complaint sought
compensatory damages, particularly, but without limitation, the Board's expenses for security, substitute teachers, counsel fees and costs, and other expenses incurred by the Board in resisting and preparing to resist the illegal action of the defendants....
The employees did not return to work. The board then moved on order to show cause to enforce the earlier order, in aid of litigants' rights, pursuant to R. 1:10-5.
On May 18, 1992, the judge again ordered defendants to return to work. His order, prepared by plaintiff's attorneys, also ordered
that the defendants be required to reimburse the Board of Education for the legal and administrative costs of the illegal work-stoppage, including the cost of substitute teachers and the Board is given leave to present evidence of its costs within 30 days hereof.
The order also set forth that the county prosecutor be designated to prosecute defendants for contempt of the court's previous order of May 15, 1992, in accordance with R. 1:10-4. Apparently, *52 the criminal contempt proceeding was abandoned. No reference is made to it in any subsequent pleadings or at any hearings. At defendants' request, a provision was added to the order requiring the parties to meet and negotiate with a PERC mediator.
The employees did not return to work until approximately one week after the order was signed. On May 22, 1992, the parties signed a handwritten "Return to Work Agreement." The agreement provided:
Upon the Association's return to work the Board of Education and the Association agree that each party and their respective memberships will use their best efforts to normalize relations between the parties. It is the intent of the parties to avoid any workplace disruptions based upon participation or non-participation in the work stoppage. The Association and the Board agrees that it will direct its members to comply with the Agreement and to resume work assignments as if no withholding of services had occurred.
All other items agreed to previously (see attachment) shall be incorporated into the Agreement.
All other items are withdrawn.
The board did not submit its list of strike-related expenses to the judge until late September 1992, well beyond the thirty-day deadline listed in the order of May 18, 1992. The expenses claimed totaled $29,614.64: $13,562.50 for legal costs, $14,875 for replacement substitutes, and $1,177.14 for other "miscellaneous" expenses. The board's attorneys thereafter submitted an additional bill for $5,332.50, for services rendered from August 31, 1992, through November 18, 1992, the day before the judge rendered his final decision. This raised the total of submitted expenses to $34,947.14.
The judge scheduled a hearing on the expense claim for October 5, 1992. The parties were required to submit proposed findings of fact and conclusions of law one week before the hearing date.
Plaintiff submitted its proposed findings and conclusions on September 28, 1992. The matter was adjourned for one week until October 6, 1992. Defense counsel had not yet submitted proposed findings and conclusions. On October 6, 1992, the matter was again postponed because defense counsel was not prepared to proceed. The judge then set a new hearing date of *53 October 30, 1992, later postponed to November 5, 1992. On November 5, 1992, the matter was again adjourned and rescheduled for November 19, 1992, because of defense counsel's unavailability. Defense counsel finally submitted his proposed findings of fact and conclusions.
On November 19, 1992, the scheduled hearing date, defense counsel was again unavailable. The judge decided to render a decision based on the papers submitted by the parties. That day the judge read his decision into the record.
The judge reduced plaintiff's counsel's application from $18,895 to $17,887. From the total expenses of $33,939.14, he deducted $20,484.66, the amount withheld from defendants' salaries while they stayed out on strike. He entered a judgment ordering defendants to pay $13,454.48 "as reimbursement for the cost of this illegal work stoppage."
We reject defendants' contention that they did not have notice of the judge's initial return to work order of May 15, 1992. Defendants were all aware of the judge's ruling, specifically that defendants were required to immediately return to work. If defendants were not served with actual copies of the order, it was because they deliberately avoided service. Ledbetter v. Schnur, 107 N.J. Super. 479, 485, 259 A.2d 237 (Law Div. 1969).
We also reject defendants' contention that the return-to-work agreement of May 22, 1992, settled all of the claims for the board's strike-related expenses. The award of these expenses was provided in the order of May 18, 1992. The waiver of such a provision must be "clear and unmistakable." Red Bank Regional Educ. Ass'n v. Red Bank Regional High School Bd. of Educ., 78 N.J. 122, 140, 393 A.2d 267 (1978). Moreover, we seriously question whether such a provision could be struck from the court order without approval by the court which issued this order in a case involving the public interest.
We remand for reconsideration of the counsel fees and "strike-related expenses" awarded to plaintiff.
*54 Plaintiff is not entitled to all attorney's expenses incurred during the strike, only those resulting from obtaining the order to show cause of May 18, 1992, seeking, in aid of litigants' rights, to enforce the return-to-work provisions of the May 15, 1992 order. R. 1:10-5 provides that "[t]he court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule." Only legal expenses incurred in securing the order enforcing a litigants' previously-existing rights are allowable. Counsel fees are not available to a prevailing party unless they are provided by statute, court rule or contractual provision. R. 4:42-9(a)(7) and (8); McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 554, 626 A.2d 425 (1993); Satellite Gateway Communications, Inc. v. Musi Dining Car Co., 110 N.J. 280, 285-86, 540 A.2d 1267 (1988). The order of May 18, 1992, requiring defendants to pay for all "legal ... costs of the illegal workstoppage" was too broad.
We find no authority which permits the imposition of non-legal strike-related costs pursuant to R. 1:10-5. As we pointed out in East Brunswick Bd. of Educ. v. East Brunswick Educ. Ass'n, 235 N.J. Super. 417, 563 A.2d 55 (App.Div. 1989):
The object of a civil proceeding to afford supplemental relief to a litigant, R. 1:10-5, is to enforce a court's order. Unlike a contempt proceeding, R. 1:10-1 through 4, punishment is not the objective, though a sanction imposed by the court to compel compliance may inflict punishment's sting.
[Id. at 420-21, 563 A.2d 55.]
In Passaic Tp. Bd. of Educ. v. Passaic Tp. Educ. Ass'n, 222 N.J. Super. 298, 536 A.2d 1276 (App.Div. 1987), we said:
[Under R. 1:10-5] it was also appropriate to order defendants to reimburse the Board for all of the expenses incurred as a result of the illegal strike.
[Id. at 305, 536 A.2d 1276.]
That statement was dicta, unnecessary to the disposition of that case. It is not binding upon us as precedential authority.
The board is not without remedy to recover legitimately-incurred strike-related costs. Public employees do not have a right to strike in New Jersey. Board of Educ., Borough of Union Beach v. New Jersey Educ. Ass'n, 53 N.J. 29, 36, 247 A.2d 867 (1968). The school board has a right to recover such damages *55 from its striking employees because they flow from the breach of the duty not to strike. The board sought such damages as one of its prayers for relief in the verified complaint. We note that defendants' proposed findings of fact and legal conclusions acknowledge that "[p]laintiff expended fourteen thousand eight hundred seventy-five ($14,875.00) dollars for substitutes." Some of the expense items claimed by the board appear to be related to costs arising from negotiations between the parties, not from the strike-related activities. We leave plaintiff to its proof as to such items.
The credit to defendants of wages withheld by the board against the amount of strike-related expenses owed as provided in Passaic Tp. Bd. of Educ., supra, 222 N.J. Super. at 305-06, 536 A.2d 1276, are appropriate when evaluating a damage claim for strike-related expenses, rather than under R. 1:10-5. These damage claims for strike-related expenses should ordinarily be triable as a summary proceeding pursuant to R. 4:67-2(b).
We disagree with the holding in Passaic Tp. Bd. of Educ., supra, 222 N.J. Super. at 306, 536 A.2d 1276, that continuing monetary sanctions imposed to secure compliance with a court order pursuant to R. 1:10-5 require an adjudication of contempt following a proceeding conducted pursuant to R. 1:10-2 and -4. We also disagree with the statement that "[a] coercive order seeking to end illegal action may provide a fine, which may not exceed $50 under N.J.S.A. 2A:10-5." Id. at 304, 536 A.2d 1276. As Judge D'Annunzio pointed out in East Brunswick Bd. of Educ., supra, R. 1:10-2 contempt proceedings redress
an offense against governmental authority and a proceeding to punish for a contempt is criminal. On the other hand, a proceeding to afford a litigant supplemental relief from an adverse party's failure to obey a court's order is civil, though historically it was referred to as a civil contempt proceeding.
[235 N.J. Super. at 420, 563 A.2d 55.]
A monetary sanction imposed pursuant to R. 1:10-5 and unrelated to a litigant's damages is an entirely proper tool to compel compliance with a court order. Id. at 421, 563 A.2d 55. It has nothing to do with criminal contempt proceedings, $50 fines *56 imposed pursuant to R. 1:10-5, or with liquidated damage claims of the aggrieved party. We agree with Judge D'Annunzio's suggestion that Passaic Tp. Bd. of Educ., supra, "unduly limits the court's discretion in a civil enforcement proceeding." Id. at 422, 563 A.2d 55. If monetary sanctions are unavailable to enforce the court's order, the judge will probably be left with the frequently undesirable alternative of incarceration as "the only available compliance sanction." Ibid.
Of course, the sanction, while "in an amount sufficient to sting and force compliance ... must not be so excessive as to constitute ruinous punishment." Ibid. In imposing the sanction, the court must consider "the offending party's ability to pay and the sanction's impact on that party in light of its income, status and objectives, as well as the sanction's impact on innocent third parties." Id. at 422-23, 563 A.2d 55.
Affirmed in part, reversed in part. Remanded to the Chancery Division for reconsideration of counsel fees pursuant to R. 1:10-5, and for a summary proceeding to determine the non-legal strike-related damages incurred by plaintiff board of education.
We do not retain jurisdiction.