SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ELIZABETH K. HAYS, | ) Arizona Supreme Court |
| | ) No. CV-02-0316-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-SA 02-0157 |
| THE HONORABLE J. RICHARD GAMA, | ) |
| JUDGE OF THE SUPERIOR COURT OF | ) Maricopa County |
| THE STATE OF ARIZONA, in and for | ) Superior Court |
| the County of MARICOPA, | ) No. DR 2000-010206 |
| | ) |
| Respondent Judge, | ) |
| | ) |
| | ) **O P I N I O N** |
| DONALD T. HAYS, | ) |
| | ) |
| Real Party in Interest. | ) |
| | ) |
| _____ | ) |

Special Action from the Superior Court of Maricopa County
The Honorable J. Richard Gama, Judge

**RELIEF GRANTED IN PART**

_____

Patterson & Simiele                                          Tempe
     by  Scott L. Patterson
Attorneys for Petitioner Elizabeth K. Hays

John R. Zarzynski                                             Mesa
Attorney for Real Party in Interest Donald T. Hays

Dianne Post                                                Phoenix
Attorney for *Amici Curiae* Arizona Coalition
Against Domestic Violence Inc. and
Arizona Voice for Crime Victims, Inc.

_____

**H U R W I T Z**, Justice

¶1      This case involves the dissolution of a marriage and a hotly contested child custody dispute.  We granted review to consider whether certain contempt sanctions imposed on a party for disobeying an order improperly interfered with the superior court's duty to determine the best interests of the child in awarding custody.

**I.**

¶2      On June 9, 2000, Elizabeth K. Hays ("Mother") filed a petition in superior court to dissolve her marriage to Donald T. Hays ("Father").  The couple had a five-year-old daughter ("Daughter"), and the issue of child custody became the subject of bitter dispute.  On November 28, 2000, the superior court appointed a psychologist, Dr. John Moran, to perform a custody evaluation.

¶3      Wendy Dutton, a forensic interviewer at the Child Abuse Assessment Center at St. Joseph's Hospital, subsequently told Dr. Moran that Daughter may have been sexually abused by Father and others.[1]  Dr. Moran accordingly recommended to the superior court that Daughter visit a therapeutic clinician, both to provide counseling and to make recommendations regarding custody and

---

[1]      Father has been charged with criminal sexual misconduct; the criminal case against Father is currently pending.  The superior court has deferred a final custody determination until the resolution of the criminal action.

visitation to the court. The superior court then appointed Diana Vigil, Dr. Moran's spouse, as the child's therapeutic counselor.

¶4 At an evidentiary hearing held on January 29, 2001, Father and Mother agreed that Ms. Vigil should not serve as Daughter's counselor because of the potential for a conflict of interest in Dr. Moran's evaluation of any recommendations that might come from his spouse. At Father's request, the superior court appointed Dr. Brian Yee in Ms. Vigil's place. Mother did not object to the appointment of Dr. Yee at the January 29 hearing.

¶5 On February 22, 2001, however, Mother moved for reconsideration of the appointment of Dr. Yee. In support of this motion, Mother submitted an affidavit from the forensic interviewer, Wendy Dutton, alleging that Daughter would be better served by a female therapist. Ms. Dutton recommended Mary Livingston, whom she called "one of the finest therapists in Maricopa County." In a minute entry dated March 26, 2001, the superior court denied Mother's motion for reconsideration, finding Dr. Yee qualified to be the child's counselor.

¶6 Despite the superior court's denial of her motion, Mother, who had temporary custody of Daughter, did not take her to see Dr. Yee. Instead, in April 2001, Mother began taking the child to Ms. Livingston for counseling.

¶7 After Father learned that Daughter had been seeing Ms. Livingston and not Dr. Yee, he moved for sanctions against Mother.

3

Prior to the sanctions hearing, Dr. Yee opined that it would not be in Daughter's best interest to begin a new therapy regime with him if a positive therapeutic relationship had developed with Ms. Livingston. In turn, Dr. Moran opined that such a positive therapeutic relationship had been established, and that changing to Dr. Yee midstream would therefore be "disruptive and possibly harmful." Father consequently did not request that Mother be ordered to take Daughter to Dr. Yee.

¶8 The hearing on the sanctions motion was held on September 19, 2001. After hearing argument, the superior court found that Mother "knew of the Court's order, intentionally violated the Court order, and has been in noncompliance with the Court order." It accordingly held Mother "in contempt of this Court for her willful failure to comply with the prior Court order."

¶9 While the superior court agreed with the parties that Daughter's therapeutic relationship with Ms. Livingston should not be disturbed, it ordered that three immediate sanctions be imposed as a result of Mother's disobedience of its order. First, Mother was ordered to pay all fees "incurred by counselor Mary Livingston." Second, Mother was ordered to pay Father's attorney fees and costs associated with the motion for sanctions. Third, the superior court ordered in a minute entry that "the opinions of Dr. [sic] Livingston will not be allowed in the proceedings in this matter."

4

¶10    At the September 19 hearing, the superior court raised the possibility of a fourth sanction.  It requested memoranda from counsel as to whether "mental health professionals" should be prohibited from using "as a basis for their opinions the records of Mary Livingston."  On December 7, 2001, after receiving the requested memoranda, the superior court further ordered that "the clinical records of Mary Livingston may not be used directly or indirectly as evidence in this matter, nor shall they form the basis for any expert opinions expressed on child custody/access issues presented in this matter."

¶11    On March 29, 2002, Dr. Moran wrote to Mother's counsel, stating that "the Standard of Practice, both nationally and in Maricopa County, and my standard of practice is, when alleged victims of sexual abuse are involved in therapy, to request the records from that therapist and to request a telephonic consultation with the therapist."  He further advised that the order barring him from interviewing Ms. Livingston is "an unusual practice, and, I believe, contrary to the best clinical practices that I can pursue in completing this evaluation."

¶12    Armed with this opinion, Mother moved for reconsideration of the sanctions excluding the opinions of Ms. Livingston from the proceedings in the child custody matter and the order that Ms. Livingston's records may not be used to form the basis for any expert opinions expressed on child custody/access issues.  Mother

5

also asked for reconsideration of the sanctions order requiring her to pay Father's attorney fees.  The superior court denied the motion for reconsideration.

¶13     Mother then filed a special action petition in the court of appeals, arguing that the sanctions imposed were an abuse of discretion because they are contrary to the best interests of the child.  The court of appeals declined jurisdiction.  We thereafter granted Mother's petition for review.  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, Arizona Rule of Civil Appellate Procedure 23, and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (1992).

## II.

¶14     Both at the hearing on the sanctions motion and in its subsequent minute entry, the superior court cited Rule 37(b)(2) of the Arizona Rules of Civil Procedure as a basis for excluding Ms. Livingston's testimony.[2]  Notwithstanding the superior court's reference to Rule 37(b)(2), it is clear that its evidentiary sanctions, as well as the monetary ones, could not properly have been imposed pursuant to the discovery rules.

¶15     Rule 37(b)(2) applies only when a "party fails to obey an order to provide or permit discovery."  Neither the superior court

---

[2]     The court did not refer to Rule 37(b)(2) in its minute entry of December 7, 2001, which ordered that Ms. Livingston's clinical records not be used directly or indirectly in the case, nor used as the basis of any expert opinions.

6

nor any party has identified any discovery order that Mother failed to obey. The orders appointing Ms. Vigil and substituting Dr. Yee were not discovery orders, but rather orders to allow the superior court to obtain professional advice in determining child custody. *See* A.R.S. § 25-405(B) (Supp. 2002) (allowing superior court to seek professional advice on child custody issues); *see also* A.R.S. § 25-406 (2000) (providing for investigations and reports on child custody issues).[3]

¶16    Rather, as the superior court made plain at the September 19, 2001 hearing, the sanctions were imposed pursuant to the court's inherent contempt power. The only basis cited by the superior court for the sanctions was Mother's "willful failure to comply" with the order appointing Dr. Yee as the therapist, and the court expressly held Mother "in contempt of this Court" for that failure to comply. Similarly, in its December 19, 2001 minute entry, the superior court explicitly noted that its decision to exclude Ms. Livingston's records from direct or indirect use at

---

[3]    While Rule 35(a) of the Arizona Rules of Civil Procedure permits a court under certain circumstances to order a mental or physical examination of a party or a person in the custody of a party, the order appointing Dr. Yee was plainly not entered pursuant to this discovery rule. Rule 35(a) provides that such an order for examination "may be made only on motion for good cause shown." No such motion was made in this case. Moreover, a Rule 35(a) order must "specify the time, place, manner, conditions, and scope of the examination;" no such specifications were made here.

trial was a result of Mother's noncompliance with the order appointing Dr. Yee.[4]

**¶17**     We therefore must determine whether the superior court abused its discretion in imposing the sanctions on Mother under its inherent contempt power. *See Danielson v. Evans*, 201 Ariz. 401, 412, ¶ 40, 36 P.3d 749, 760 (App. 2001) (superior court's contempt order reviewed for abuse of discretion).  We begin from the premise that contempt sanctions should generally be limited to "the least possible power adequate to the end proposed."  *Ong Hing v. Thurston*, 101 Ariz. 92, 100, 416 P.2d 416, 424 (1966) (quoting *Harris v. United States*, 382 U.S. 162, 165 (1965)).  This is especially true when a contempt sanction impacts an innocent third party.  *See, e.g., Franklin Township Bd. of Educ. v. Quakertown Educ. Ass'n*, 643 A.2d 34, 38 (N.J. Super. Ct. App. Div. 1994) (noting that when a court sanctions a party pursuant to a rule requiring compliance with court orders, the court must consider "the sanction's impact on innocent third parties"); *cf. McGregor v. Chierico*, 206 F.3d 1378, 1385-86 (11th Cir. 2000) (holding that a court cannot use its contempt power to forfeit assets of a contemnor also owned by a third party).

---

[4]     The superior court could not have treated Mother's failure to produce Daughter for a Rule 35(a) mental or physical examination as contempt of court.  *See* Ariz. R. Civ. P. 37(2)(D). The superior court's express finding that Mother's disobedience of the order appointing Dr. Yee was a contempt of court is thus inconsistent with any notion that the order was entered pursuant to Rule 35(a).

¶18     In this case, a very important third party is impacted by the contempt sanctions--the child.  In a child custody case, A.R.S. § 25-403(A) (Supp. 2002) mandates that the superior court make its determination "in accordance with the best interests of the child." We have repeatedly stressed that the child's best interest is paramount in custody determinations.  *See, e.g., Clifford v. Woodford*, 83 Ariz. 257, 262, 320 P.2d 452, 455 (1957) (child's best interest is the "primary consideration" and the "pole star" for the court); *Dickason v. Sturdavan*, 50 Ariz. 382, 384, 72 P.2d 584, 586 (1937) (same); *see also In re Marriage of Gove*, 117 Ariz. 324, 328, 572 P.2d 458, 462 (App. 1977) ("In a custody case the primary duty of the court is to safeguard the best interests and welfare of the children."); *Hoffman v. Hoffman,* 4 Ariz. App. 83, 85, 417 P.2d 717, 719 (1966) (refusing to apply a court rule regarding the effect of a mother's failure to file an answering brief in a child custody appeal, because doing so would have an adverse effect on the children, who were unrepresented but most interested in the proceeding).  Thus, it is necessary to consider in this case whether the various contempt sanctions imposed by the superior court unnecessarily interfered with its duty to consider the child's best interests in determining custody.

¶19     The superior court imposed four contempt sanctions here. Two imposed monetary obligations on Mother, and two excluded evidence from direct or indirect use at trial.

¶20     The two monetary sanctions were narrowly and specifically tailored to address the direct consequences of Mother's contempt. These sanctions simply required Mother to bear responsibility for costs directly occasioned by her disregard of the superior court's order--Ms. Livingston's fees and Father's attorney fees incurred in bringing the sanctions motion.  More importantly, these monetary sanctions did not in any way restrict the superior court's overriding obligation to consider the best interests of the child in determining custody.  *Cf. Woodworth v. Woodworth*, 202 Ariz. 179, 183, ¶¶ 20-21, 42 P.3d 610, 614 (App. 2002) (interpreting A.R.S. § 25-408(D), and holding that the statutory prohibition of sanctions for disobedience of an order involving parenting time rights "affecting custody or visitation does not limit the trial court's ability to impose financial or other appropriate sanctions").  The two monetary sanctions were therefore well within the discretion of the superior court.[5]

---

[5]     Nothing in the size of the monetary sanctions renders them an abuse of discretion.  The order requiring Mother to pay Ms. Livingston's fees actually affected Mother only to the extent of one-half of these fees, since the superior court's previous orders required both Father and Mother each to pay half of the counselor's fees.   The  award  of  attorney  fees  amounted  to  $1474.50,  a
(continued...)

¶21     The two evidentiary sanctions, which excluded the testimony and notes of Daughter's therapeutic counselor from consideration both at trial and by the custody evaluator, are quite a different matter.[6] The statute governing custody determinations, A.R.S. § 25-403(A), provides that "[t]he court *shall* consider all relevant factors." (Emphasis added.) We have similarly cautioned that "[w]hen custody of children is involved in a court proceeding, it seems to us to be the duty of the trial court to hear all competent evidence which may be offered." *Johnson v. Johnson*, 64 Ariz. 368, 370, 172 P.2d 848, 849 (1946). Any contempt sanction excluding evidence in a child custody dispute necessarily conflicts with these overriding principles. *Cf. In the Interest of P.M.B.*, 2 S.W.3d 618, 625 (Tex. App. 1999) (vacating discovery sanction excluding evidence in child custody dispute, because "the exclusion of any important evidence as a . . . sanction can only produce a

---

[5](...continued)
substantially lower amount than the $2500.00 Father originally requested.

[6]     The latter sanction was ordered notwithstanding an argument by Mother's counsel that excluding Ms. Livingston's testimony would require Daughter to be interviewed by Dr. Moran, thereby forcing the child to relive her abuse and, accordingly, cause her unnecessary trauma. In response to counsel's statement that "I just don't want to traumatize [Daughter]," the superior court replied, "I respectfully submit mother's noncompliance with my order has traumatized me. She created the problem that we're dealing with." While we recognize that the superior court was concerned with Mother's disobedience of its order, this statement was inappropriate.

11

less-informed decision, contrary to the best interest of the child").[7]

¶22    In this case, the two evidentiary sanctions imposed by the superior court have an especially significant effect on the ability of the court to determine the child's best interests. Both parties agree that the testimony and records of the child's therapist are relevant to the custody proceedings. Both parties further agree that sending Daughter to another therapist after she has established a relationship with Ms. Livingston would be contrary to her best interests. Thus, the trial court's evidentiary sanctions will effectively preclude potentially significant information from being considered in the custody determination. The court's own custody evaluator, Dr. Moran, expressly indicated that "best clinical practices" require that he have access to this information in completing his evaluation. *Cf.* A.R.S. § 25-406(B) ("In preparing his report concerning a child, the investigator may consult any person who may have information about the child or his potential custodial arrangements.").

¶23    Under these circumstances, the superior court erred in imposing the two evidentiary sanctions. These sanctions were not

---

    [7]    Father also argues that Ms. Livingston's testimony and records should be excluded because they are untrustworthy or because there may be better qualified experts. The superior court, however, did not exclude the evidence on these grounds; the court did not consider any specific testimony or records in entering its sanctions. The sole reason the superior court gave for its evidentiary sanctions was Mother's disobedience of its orders.

necessary to vindicate the court's authority; the trial judge plainly had at his disposal sufficient other sanctions to punish Mother's contempt without also impacting his ability to consider the best interests of the child. For example, in addition to the monetary sanctions that we have upheld today, the superior court could have, if necessary, also imposed community-service related penalties. *See Woodworth*, 202 Ariz. at 182, ¶ 16, 42 P.3d at 613; *cf. In the Interest of P.M.B.*, 2 S.W.3d at 625 (holding that the exclusion of evidence in a child custody proceeding as a discovery sanction "should be resorted to only where lesser sanctions are either impracticable or have been attempted and proven unsuccessful").[8]

**IV.**

¶24    For the foregoing reasons, we vacate the sanctions imposed by the superior court excluding the opinions of Mary Livingston and preventing Dr. Moran and other experts from considering Ms. Livingston's testimony and records in rendering their opinions. We affirm the sanctions requiring Mother to pay all of Ms. Livingston's fees and the attorney fees incurred by

---

[8]    Father cannot reasonably argue that he will be unduly prejudiced by the admission of testimony from Ms. Livingston or use of her records by Dr. Moran and other experts. Because of the pending criminal charges against Father, the superior court has deferred indefinitely any trial on the issue of custody. Father therefore has ample time to investigate, by way of formal discovery or otherwise, any potential testimony from Ms. Livingston and to devise any strategy necessary to counter the evidence she may offer.

Father in connection with the motion for sanctions.  Both Mother and Father have requested attorney fees incurred on appeal pursuant to A.R.S. § 25-324 (2000); in the exercise of our discretion, we deny both fee applications.

 

_____
Andrew D. Hurwitz, Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice

14