SWANN, Judge:
¶ 1 James A. ("Father") appeals the juvenile court's order terminating his parental rights to A.L. We hold that the juvenile court abused its discretion by precluding admission of a favorable bonding assessment that was disclosed two days late, and by denying Father's motion to continue. We therefore vacate the termination order and remand.
FACTS AND PROCEDURAL HISTORY
¶ 2 A.L. is a female child born in July 2012 to Father and Ashley H. ("Mother").[2] Mother and Father were never married, and Father's paternity was not legally established until early 2016, after the Arizona Department of Child Safety ("DCS") had already filed a dependency petition for A.L. Father lives in northern Nevada, while A.L. lives with her maternal grandparents in northern Arizona.
¶ 3 In October 2016, DCS moved to withdraw its motion to terminate Father's parental *1094 rights and change the case plan to family reunification, arguing that Father had maintained regular family time with A.L. and demonstrated appropriate behavioral changes. But just one month earlier, A.L.'s maternal grandparents had intervened and privately moved to terminate Father's rights to A.L. on the grounds of abandonment. See A.R.S. § 8-533(B)(1). Although the court granted DCS's motion to withdraw its motion to terminate Father's rights, it still moved forward with a severance and adoption plan on the grandparents' private motion. In the same order, the court denied DCS's motion to transfer physical custody of A.L. to Father, and noted DCS's request that Father complete a bonding assessment with A.L. in Arizona.
¶ 4 At the December 2016 pre-trial conference, the court continued the termination hearing from January to March 23, 2017, in part to facilitate completion of the bonding assessment, among other scheduling reasons, and the court admonished the parties to appear physically at future hearings. Then, at the final pre-trial conference in February 2017, the court ordered Father to disclose the completed bonding assessment by March 21, two days before the scheduled termination hearing, and stated that it would order, if necessary, that the assessment be conducted by March 6 to ensure its timely completion and disclosure. Father completed the assessment in Prescott on March 21, and the following night Dr. James Bluth sent his three-page report, which was favorable to Father, to Father's attorney. On March 22, anticipating the late bonding-assessment disclosure, Father moved to continue the termination hearing, and then disclosed the report in the early morning of March 23-the day set for the hearing.
¶ 5 Father did not appear physically at the termination hearing, and the court denied his motion to appear telephonically. The court noted it would treat Father's non-appearance as an admission of the allegations against him, but still permitted Father's attorney to present evidence and cross-examine witnesses. The court also denied Father's motion to continue, concluding that it was in the best interests of A.L. to get the matter resolved as soon as possible, despite the fact that the court thereby rendered itself unable to consider the bonding assessment it had sought from Dr. Bluth. The court heard testimony summarizing Dr. Bluth's report, but then precluded the report. The court also heard testimony regarding the best interests of A.L. from the grandparents' perspective, and regarding Father's inconsistent record with reunification services.
¶ 6 In its final judgment, the court terminated Father's rights to A.L. based on abandonment and the best interests of A.L. Father timely appeals.
DISCUSSION
¶ 7 Father appeals the termination based on the preclusion of Dr. Bluth's bonding assessment and, relatedly, the denial of his motion to continue, which would have ameliorated any disclosure or evidentiary issues affecting the bonding assessment. We review evidentiary rulings for an abuse of discretion and resulting prejudice. Lashonda M. v. Ariz. Dep't of Econ. Sec. , 210 Ariz. 77, 82-83, ¶ 19, 107 P.3d 923, 928-29 (App. 2005). A court abuses its discretion if it exercises its discretion "on untenable grounds, or for untenable reasons," id. at 83, ¶ 19, 107 P.3d at 929 (citation omitted), but also when it commits an error of law, Braillard v. Maricopa Cty. , 224 Ariz. 481, 497, ¶ 52, 232 P.3d 1263, 1279 (App. 2010).
¶ 8 When a party fails to timely disclose documentary evidence, the court may sanction that party by "precluding the evidence, granting a continuance or entering any order against a party as deemed appropriate." Ariz. R.P. Juv. Ct. ("Rule") 44(G). Any sanction imposed, however, must be in accordance with the best interests of the child, see Rule 36, and "should generally be limited to 'the least possible power adequate to the end proposed,' " especially when the "end" affects an innocent third party like a child, see Hays v. Gama , 205 Ariz. 99, 102, 103-104, ¶¶ 17, 21-23, 67 P.3d 695, 698, 699-700 (2003) (citations omitted) (holding that the superior court abused its discretion as a matter of law when it imposed evidentiary sanctions that unnecessarily impeded its own ability to determine the best interests of the *1095 child in a custody determination). A court generally must hear any competent and potentially significant evidence that bears on the best interests of the child. Id. at 103-04, ¶¶ 21-23, 67 P.3d at 699-700.
¶ 9 After hearing from the parties regarding admission of the bonding assessment report, the court sanctioned Father under Rule 44(G) by precluding the report. In doing so, the court considered its mid-February order that the report be disclosed no later than March 21 (a mere two days before the termination hearing), and the fact that Father did not participate in the assessment until that date. It also cited evidentiary issues, noting that Dr. Bluth was not available for the hearing and thus not subject to cross-examination, and expressing its concerns about the lack of foundation for the report.
¶ 10 Father disclosed the report two days after the deadline, but before the termination hearing took place. Evidence from the pre-trial conferences and termination hearing shows that Father's struggle to complete the assessment in a timely manner was not the product of bad faith. Father lived in a mountainous region of northern Nevada, approximately seven hours from Mohave County, and experienced severe winter weather. He was also concerned that leaving for Arizona would jeopardize his job, and that losing his job would jeopardize his rights to A.L.
¶ 11 With the above information, the court had some discretion to sanction Father for not disclosing the report until the morning of the hearing. See Rule 44(G). But the court was also aware that the report was favorable to Father because Father's attorney questioned DCS adoption specialist Valerie Kearney about its contents. Before any objection, Ms. Kearney gave the following summary at the hearing:
The doctor wrote [that] the results of [the] current assessment suggest that [the child] has a strong bond and attachment with her father. She was responsive to his direction and seemed very happy to be with him. She did not want to separate from him at the end of the assessment. The interactions between [James A.] and his daughter were appropriate, and he appeared to have adequate parenting skills. The interactions were warm and affectionate and no problems were noted. [James A.] has attempted to maintain contact despite the distance in their location.
The court precluded the report even though it was aware of the significant impact it could have had on its determination of A.L.'s best interests. The court then indicated that it would still consider Ms. Kearney's testimony, but would give it only limited weight because of Dr. Bluth's unavailability for cross-examination.
¶ 12 Father did not possess any other evidence that could substitute for Dr. Bluth's bonding assessment report. But his case was strong even without the bonding assessment-for instance, DCS moved in October 2016 to change its plan from severance and adoption to reunification between Father and A.L., finding that Father had completed a majority of his case plan obligations and had maintained a meaningful parental relationship. The court's insistence that Father complete the bonding assessment only days before the termination hearing indicates that it was well-aware of the potential impact the report could have on the case.
¶ 13 Because a court has an "overriding obligation to consider the best interests of the child," the court here abused its discretion by precluding the potentially outcome-determinative bonding assessment report. See Hays , 205 Ariz. at 103, ¶ 20, 67 P.3d at 699. By extension, insofar as the court denied Father's motion for a continuance when it was the only feasible way to admit Dr. Bluth's report, it erred. See id. at 102, ¶ 17, 67 P.3d at 698.
¶ 14 Under Rule 46(F), a motion to continue trial must be "made in good faith" and "state with specificity the reasons for the continuance." The court may grant the motion upon showing of good cause. Id. And, of course, the court must consider the best interests of the child in deciding whether to grant the continuance. See Rule 36.
¶ 15 Father provided good cause for his request-that a continuance was necessary to properly admit the report. And the evidence shows that the request was made in good faith-Father lived approximately seven *1096 hours away in a region with severe winter weather, and was worried about losing his job. But the court determined it was in the best interests of A.L. to resolve the issue and give her permanency as quickly as possible. Had there been a different way to weigh the report without continuing the hearing, the court's denial of Father's motion would not have been an abuse of discretion. But the compressed timeframe for disclosure that the court imposed left no room for even excusable delay, and we cannot agree that the child's best interests were served more by holding the hearing on the scheduled day than by consideration of the essential evidence.
¶ 16 While the court has broad power to manage its calendar and enforce disclosure obligations, our supreme court left no doubt in Hays that the best interests of children are paramount and a sanction against a litigant-parent should not work to the detriment of a nonlitigant-child. The bonding assessment was not an insignificant or cumulative piece of evidence-it was potentially determinative of Father's fundamental constitutional right to parent his child, and the course of A.L.'s life. Mere scheduling concerns are insufficient to warrant judicial decision-making in knowing disregard of such evidence.
CONCLUSION
¶ 17 For the reasons discussed, we vacate the termination order and remand for further proceedings.

Mother's rights to A.L. were also severed in these proceedings, but she is not a party to this appeal.