NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the matter of:

D.T., *Petitioner/Appellee,*

*v.*

C.L., *Respondent/Appellant.*[1]

No. 1 CA-CV 19-0826 FC
FILED 5-6-2021

Appeal from the Superior Court in Maricopa County
No. FC2018-053899
The Honorable Dawn M. Bergin, Judge *Retired*

**REMANDED**

COUNSEL

Burggraff Tash Levy PLC, Scottsdale
By Michael Dinn
*Counsel for Petitioner/Appellee*

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Respondent/Appellant*

---

[1] To safeguard the identities of the minor children, it is ordered that the clerk of this court shall amend the caption of this appeal as shown above. It is further ordered that the caption shown herein shall be used on all future documents filed in this matter.

---

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**S W A N N**, Chief Judge:

¶1        This is a contested case regarding legal decision-making and parenting time for the three minor children of C.L. ("Mother") and D.T. ("Father").  C.L. failed to appear at trial and the superior court proceeded in her absence, awarding D.T. sole legal decision-making and severely restricting C.L.'s parenting time.  Though C.L. thereafter immediately and repeatedly requested an opportunity to participate, the superior court did not permit her to do so.  We remand for an evidentiary hearing under *Hays v. Gama*, 205 Ariz. 99 (2003), because on this record, the court precluded evidence that was potentially significant to its duty to consider the children's best interests.

**FACTS AND PROCEDURAL HISTORY**

¶2        In July 2018, Father filed a petition to establish and modify[2] legal decision-making and parenting time regarding the children.  He asked for joint legal decision-making and equal parenting time.  He indicated that "[d]omestic violence has occurred but it was committed by both parties or it is otherwise still in the best interests of the minor child(ren) to grant joint or sole legal decision-making . . . to a parent who has committed domestic violence because . . . the domestic violence did not involve the children."  Mother, who was self-represented during most of the proceedings, responded that "[t]here has been domestic violence . . . and neither joint nor sole legal decision-making . . . should be awarded to" Father.  Mother asked for sole legal decision-making and majority parenting time.

¶3        In December 2018, and then again in March 2019, the parties reached—and the court approved—temporary agreements providing that

---

[2]        Though Father styled his petition as one to establish legal decision-making and parenting time, a paternity order had previously granted Mother custody of the parties' oldest child.  Accordingly, the superior court properly construed the petition as seeking modification with respect to the oldest child.

the oldest child would reside mostly with Father and the younger children would reside mostly with Mother. The court then set the matter for a June 2019 trial.

¶4 In March 2019, Mother filed a motion to reset the trial date. In filing the motion, Mother used an address different than the PO-box address she had previously provided to the court via a change of address form. In an April 2019 minute entry addressed to Mother at the PO-box address, the court granted Mother's motion, vacated the June trial, and reset trial to September 3, 2019.

¶5 Father filed a pretrial statement in August, indicating on the form that "each party has received a copy of the Pretrial Statement and . . . each party has exchanged true and correct copies of all exhibits." He reiterated that he was seeking joint legal decision-making, and he asked for "50/50 parenting time with [the younger children] and full parenting time with [the oldest child] with visitation time with [Mother]."

¶6 Mother, who was still self-represented, neither filed a pretrial statement nor appeared at the September 3 trial. When Father informed the court that he did not know why Mother was not there, the court found that Mother had failed to appear without good cause and proceeded to receive evidence in her absence.

¶7 With respect to domestic violence, Father testified that "[o]f course" it existed in his relationship with Mother—"we fought like cats and dogs"—but nothing physical had occurred for ten years. He stated that he "may have once" been charged or arrested for domestic violence but was not convicted, and that Mother had been arrested and convicted for domestic violence in Washington. He provided exhibits including a certificate showing his completion of an anger management program in 2012; documents detailing reports that Mother had struck one of the children and had left another in a store; contentious text-message exchanges; and an order of protection that he obtained against Mother early in the case based on allegations that she appeared at his house three times, each time screaming at him in front of the children, twice attempting to forcibly remove them, and once destroying his property. Father also testified that Mother had undiagnosed mental health issues; that she used marijuana in front of the children and left paraphernalia in plain view in her bedroom; that she sent the children to an unacceptable childcare center in a bad neighborhood; and that she had only seen the oldest child six times since the last hearing and each time it was a "disaster."

¶8            The court-appointed advisor testified that, according to the children, Mother made upsetting comments to them about Father and Father's fiancée, did not keep the oldest child's room clean, and did not provide beds for the younger children. The advisor expressed concern that anything less than an award of sole legal decision-making to Father would prove unworkable.

¶9            The court immediately entered temporary orders awarding Father sole legal decision-making authority with respect to all the children, suspending Mother's parenting time with respect to the oldest child, and limiting Mother to four hours of supervised parenting time with the younger children.

¶10          Later that day, Mother filed a "petition[ ]" asking for the trial to be re-done. Mother stated that though she had received other notices at her address (which was not the same as the PO-box address on file with the court), she had not received notice of the trial date, and had learned of it only after Father removed the children from school after the trial under the temporary orders. She stated that she "never would have missed [the trial]" had she known it was taking place. She further described evidence that she would have offered implicating the best interests of the children: text messages showing that Father had denied her parenting time with the oldest child; testimony that Father had told the child about the court proceedings; testimony that Father had told the child that Mother did not want her; testimony that the foregoing distressed the child; police reports regarding Father's domestic violence; evidence that Father acted aggressively toward staff at the children's school and childcare facility; evidence that Father disparaged Mother in front of the oldest child and staff at the child's counseling facility; and evidence that Father continually contacted Mother's housing authority to try to obtain information about her.

¶11          Two days later, on September 5, Mother filed an updated address form and a "proof of mail error" in which she again asked for the opportunity to offer evidence at a new hearing. She attached documents showing that she had ceased using the PO-box in February 2019 and that she had notified the Postal Service of her new address. She also provided an unsworn statement from a "USPS lead clerk" to the effect that an item of mail from "City of Phoenix, Municipal Court, Financial Services" was not properly processed and therefore was not retrieved from the PO-box until September 5.

¶12        The superior court ruled on September 11 that it would take no action on Mother's September 3 and September 5 filings because they were related and she had failed to copy Father on at least one of them.

¶13        On September 17, Mother filed "proof" whereby she re-submitted copies of the Postal Service documents and again asked for relief from the temporary orders.  The superior court ruled on October 24 that, to the extent the "proof" was intended to be a motion for reconsideration, motion to alter or amend judgment, or motion for new trial, it was denied because Mother had failed to timely apprise the court of her new address consistent with ARFLP ("Rule") 9(a).  The court then entered a final judgment awarding Father sole legal decision-making with respect to all the children; suspending Mother's parenting time with the oldest child until Mother participated in therapeutic intervention with the child or the child reached a point in her counseling where she, her therapist, and Father agreed to contact with Mother on such terms determined by Father on the therapist's advice; and permitting Mother supervised parenting time with the younger children for eight hours per week, with the possibility of unsupervised parenting time every other weekend if Mother provided evidence to Father that each child had their own bed, completed a substance-abuse assessment and followed all recommendations, completed at least sixteen sessions of individual therapy, and completed an in-person anger management class.

¶14        Mother appealed the judgment, and then obtained a stay for the purpose of filing a motion for relief under Rule 85.  By that motion, she sought relief under Rule 85(b)(1), (3), and (4): she contended that her failure to appear was the product of excusable neglect; that Father committed fraud and misrepresentation by minimizing his domestic-violence history; that Father committed misconduct by not timely or properly providing her a copy of the pretrial statement and by introducing unanticipated, improperly disclosed evidence at trial; and that she was deprived of due process because she was given no notice of the grounds on which the judgment was premised.  She attached exhibits including police reports detailing an incident where Father kicked her and closed a door on her during her 2010 pregnancy.

¶15        The superior court denied the Rule 85 motion.  The court concluded that Mother's reliance on Postal-Service forwarding to receive notice of court proceedings was unreasonable; that Mother could have challenged any disclosure issues had she appeared; that Mother could have anticipated Father's evidence; that the court was not constrained by the party's filings in determining the children's best interests; and that in view

5

of Father's evidence of Mother's domestic violence, Mother's statements and evidence regarding Father's domestic violence "would not have had an effect, much less an 'especially significant effect,' on the Court's ability to determine the children's best interest[s]" under *Hays v. Gama*.

**¶16**   Mother filed an amended notice of appeal seeking review of the court's denial of Rule 85 relief.

## DISCUSSION

**¶17**   We review the denial of Rule 85 relief for abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328 (1985).[3] We reject as unfounded Father's contention that Mother waived or abandoned her challenge to the Rule 85 order by virtue of deficiencies in her opening brief.

**¶18**   Mother has shown no abuse of discretion in the superior court's determinations under the Rule 85(b)(1), (3), and (4) rubric that she identified in her motion. First, the court did not abuse its discretion by determining that Mother's failure to appear was not occasioned by excusable neglect. The court reasonably concluded that Mother, who had demonstrated knowledge of the process of updating her address with the court, did not act with reasonable prudence by relying solely on a Postal Service forwarding process to receive notice of court proceedings. *See Geyler*, 144 Ariz. at 331 ("The standard for determining whether conduct is 'excusable' is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances." (citation omitted)). Second, the court did not abuse its discretion by holding that Father's conduct did not constitute fraud, misrepresentation, or misconduct, or render the judgment void. To be sure, Father's testimony regarding his domestic-violence history was vague—but it was not wholly inconsistent with her evidence and did not rise to the level of fraud or misrepresentation.[4] *Cf. Sloan v. Florida-Vanderbilt Dev. Corp.*, 22 Ariz. App. 572, 575 (App. 1974) ("[I]n a default hearing pursuant to [civil] Rule 55(b), there is no duty on the part of a party either to present all of its evidence in support of his claim for damages or to offer evidence in his possession with

---

[3]  We apply case law interpreting the civil rules when the language of those rules is substantially the same as the language of the family law rules. Rule 1(c).

[4]  We note, however, that the sparseness of Father's testimony underscores our conclusion, *infra*, that the court should have received more evidence to determine the children's best interests.

his contradictory to either liability or damages.  Of course, a party cannot present false evidence to establish a default judgment, for such would be a fraud on the court . . . .").  Third, Mother provided insufficient evidence to show that Father untimely or improperly provided her the pretrial statement and exhibits.  And finally, the court's order was not void simply because it did not track Father's requests—in determining legal decision-making and parenting time, the court must act in accordance with the children's best interests and is not limited by the parents' positions.  *See Sundstrom v. Flatt*, 244 Ariz. 136, 138, ¶ 7 (App. 2017) (holding that when only one party petitions to modify legal decision-making, the court is not precluded from awarding sole legal decision-making to the non-petitioning party); *cf. Solomon v. Solomon*, 5 Ariz. App. 352, 355–56 (1967) (holding that the court abused its discretion by deciding custody when a party sought custody on only one day's notice).

**¶19**　　　　But though the court did not abuse its discretion by denying relief under Rule 85(b)(1), (3), and (4), consideration of the children's best interests required the court to address the merits of the evidence Mother provided.  It is true that Mother failed to act with sufficient diligence to afford her a right to automatic relief from the judgment.  Yet Mother's vigorous (if untimely) efforts to introduce evidence critical to the court's mission supported her requests to be heard, and to have the judgment modified if necessary.  On this record, it was an abuse of discretion not to afford Mother the opportunity for a hearing.  *See* Rule 85(b)(6) (providing that the court may order relief from judgment for "any other reason justifying relief"); *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 364, ¶ 25 (App. 2015) (providing that relief under a catch-all provision of the analogous civil rule is available when other provisions do not apply and, under the totality of the facts, "extraordinary circumstances of hardship or injustice justifying relief" exist (citation omitted)); *Quijada v. Quijada*, 246 Ariz. 217, 220, ¶ 6 n.3 (App. 2019) (holding that a party need not a file specific motion to invoke Rule 85).

**¶20**　　　　Children's best interests are "paramount" when determining legal decision-making and parenting time.  *Hays*, 205 Ariz. at 102, ¶ 18; *see also Sundstrom*, 244 Ariz. at 138.  Accordingly, as our supreme court made clear in *Hays*, "[w]hen custody of children is involved in a court proceeding, it [is] the duty of the court to hear all competent evidence which may be offered."  205 Ariz. at 103, ¶ 21 (citation omitted).  Indeed, A.R.S. § 25-403(A) expressly commands that "[t]he court *shall* determine legal decision-making and parenting time, either originally or on petition for modification, in accordance with the best interests of the child[, and t]he court *shall* consider all factors that are relevant to the child's physical and

emotional well-being." (Emphases added.) *Hays* therefore explained that "excluding evidence in a child custody dispute necessarily conflicts with these overriding principles." 205 Ariz. at 103, ¶ 21.

**¶21** To be sure, the family law rules provide that when a party fails to appear at trial without good cause, the court may restrict that party's use of evidence or even render a dismissal or default judgment. *See* Rule 76.2(a)(2), (b)(5)–(6); Rule 44.2. But such sanctions are available only when they do not affect the court's ability to fulfill its duty to determine the children's best interests. *See Johnson v. Provoyeur*, 245 Ariz. 239, 243–45, ¶¶ 16–17, 20–21 (App. 2018) (upholding exclusion of untimely disclosed supplemental expert report because expert's testimony regarding original report, along with other evidence, gave court "sufficient information to assess the children's best interests"); *see also* Rule 76.2(b)(5) (providing that dismissal is an inappropriate remedy if it "would be contrary to the best interests of a child"); Rule 44.2(d) (providing that "if a defaulted party appears, the court must allow that party to participate in the hearing to determine what relief is appropriate or to establish the truth of any statement"). As *Hays* held, preclusion is inappropriate if it prevents "potentially significant information from being considered in the custody determination" and thereby has "an especially significant effect on the ability of the court to determine the child's best interests." 205 Ariz. at 103–04, ¶ 22; *see also James A. v. Dep't of Child Safety*, 244 Ariz. 319, 322, ¶ 13 (App. 2018) (holding that court abused its discretion by precluding "potentially outcome-determinative bonding assessment report" in severance case). In such circumstances, sanctions are limited to those that "d[o] not in any way restrict the superior court's overriding obligation to consider the best interests of the child." *Hays,* 205 at 103, ¶ 20 (upholding monetary contempt sanctions).

**¶22** The superior court concluded that Mother's Rule 85 motion and the exhibits attached thereto "would not have had an effect, much less an 'especially significant effect,' on the Court's ability to determine the children's best interest." But the children's best interests appear precarious in this case, and the factors the court was required to consider in determining best interests necessarily required the court to assess the parents' credibility regarding contested issues. *See* A.R.S. §§ 25-403, -403.01, -403.03, -403.04, -403.05. And though Mother did not act diligently to ensure that she received notice of the trial, upon learning that trial had occurred (and that the trial resulted in relief far more drastic than what Father had requested) she acted immediately—mere hours after the trial concluded—to contest the temporary orders and ask for an opportunity to present her case at a hearing. She also aggressively continued to seek relief

over the following months, describing the evidence she sought to present. It therefore was apparent that Mother was immediately available and ready to participate by offering testimony and cross-examining Father.[5]   And because such participation would potentially provide the court with information highly probative to (at the least) the critical question of the parties' credibility, the court erred by not permitting an evidentiary hearing.  *See Pridgeon v. Superior Court (LaMarca)*, 134 Ariz. 177, 181 (1982) ("[I]f affidavits are directly in opposition upon a substantial and crucial fact relevant to the grounds for [custody] modification, the court may not conduct a 'trial by affidavit,' attempting to weigh the credibility of the opposing statements.  In such a case, the court must hold a hearing."); *Volk v. Brame*, 235 Ariz. 462, 466–68, ¶¶ 14, 18, 21 (App. 2014) (recognizing that documentary evidence is inadequate to permit reliable assessment of credibility, and holding that the court violates due process by disallowing meaningful direct testimony and adequate cross-examination when resolution of material contested issue hinges on credibility).

**¶23**          *Hays* places trial courts in a difficult position, because rules designed to ensure that the superior court delivers prompt decisions can be violated with what may be perceived as impunity.  But *Hays* is a binding decision of our supreme court, and it is rooted in sound reasoning: the public policy of Arizona places the best interests of children above other considerations, and there are times when procedural rules must yield to that policy.  This is one of those times.

---

[5]      We note also that this was not a case in which Mother had repeatedly failed to participate—by contrast, both she and Father were active litigants in the pretrial phase.  *Cf. Johnson*, 245 Ariz. at 245, ¶ 20 (warning that "[w]hile a court may generally hear any competent and potentially significant evidence pertaining to the best interests of a child, a parent may not rely on *Hays* as a means to flout multiple disclosure deadlines without good cause").

**CONCLUSION**

**¶24** We conclude that Mother was entitled to an evidentiary hearing on her motion for relief from the judgment. We remand for that evidentiary hearing and all additional proceedings that the superior court may deem necessary. We express no opinion as to the appropriate result of any future proceedings. We deny both parties' requests for attorney's fees on appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AA