**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1018-18T3

ESTATE CAPITAL GROUP, LLC,
MCGINLEY SQUARE GROUP, LLC,
and CEDAR LANE REALTY, LLC,

      Plaintiffs-Respondents,

v.

ALLIANCE HEALTHCARE, INC.,
d/b/a HORIZON HEALTH CENTER,

      Defendant-Appellant,

and

SEAVIEW CAPITAL PARTNERS, LLC
and JERSEY CITY BERGEN, LLC,

      Defendants.

_____

Argued telephonically April 27, 2020 –
Decided July 23, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000078-17.

Laurence B. Orloff argued the cause for appellant (Orloff, Lowenbach, Stifelman & Siegel, PA, attorneys; Laurence B. Orloff, of counsel and on the briefs; Xiao Sun, on the briefs).

Gregory M. Dexter argued the cause for respondents (Newman Ferrara, LLP, attorneys; Gregory M. Dexter, of counsel and on the brief).

PER CURIAM

In this complicated commercial litigation, defendant Alliance Healthcare Inc. (Alliance) appeals the Chancery Division's: (1) October 12, 2018 order requiring it to pay interest on the $2.1 million loan provided by plaintiff McGinley Square Group, LLC (McGinley Square) held in escrow by Jersey City Bergen, LLC's (JCB) counsel, and on the $50,000 loan provided by plaintiff Cedar Lane Realty, LLC (Cedar Lane) that was repaid after the due date; (2) January 15, 2019 order requiring it to pay attorneys' fees of $387,954.22 and costs of $1,433.68 to plaintiffs related to their collection of the Cedar Lane loan and enforcement of the agreement concerning the $2.1 million pay-off by McGinley Square; and (3) February 9, 2019 order requiring it to pay monetary sanctions of $106,500 for not selling several of its properties in Jersey City ("the properties") to plaintiffs by the court-ordered deadline of November 20, 2018.

For the reasons that follow, we affirm in part and reverse, and remand in part. Specifically, we: (1) affirm the monetary sanctions payable to plaintiffs for not selling the properties by the court-ordered deadline; (2) affirm the award of attorneys' fees and costs related to plaintiffs' collection of the Cedar Lane loan; (3) reverse the award of interest on the $2.1 million to plaintiffs; (4) reverse the award of attorney's fees and costs to plaintiffs for enforcing Seaview Capital Partners, LLC (Seaview Capital) and JCB's purchase option agreement prior to the assignment of their rights to purchase the properties; and (5) remand for the court to reduce the award of attorneys' fees and costs related to Seaview Capital and JCB's efforts to purchase the properties.

I.

We presume the parties' familiarity with the details of the numerous financial transactions and the associated facts culminating in a lengthy history of litigation involving six separate entities, spanning two lawsuits, and several appeals; thus, they need not be repeated here. In the interests of brevity, we therefore provide only a brief summary to give context to our decision.

At the center of this dispute is the long-delayed sale of the properties by Alliance. Upon emerging from Chapter 11 bankruptcy, Alliance received a debtor-in-possession (DIP) loan from Estate Capital, one of the three plaintiffs

which Rafael Levy is the principal and at least fifty percent owner of, and are appellants in this appeal. Levy's other two entities are McGinley Square and Cedar Lane.

The DIP loan was paid in full on May 1, 2016, when Seaview Capital through JCB, a new entity established by Seaview Capital for the loan transaction, made a loan to Alliance at a twelve percent interest rate secured by a mortgage with an option to purchase the properties as a part of a contemplated sale leaseback transaction. The option was valid from May 2 to July 1, 2016. The proposed commercial lease, if the option was exercised, provided that for ten years Alliance would pay monthly rent of $45,000. After completion of the agreement, Seaview Capital and JCB began conducting due diligence. At some point during due diligence, environmental concerns arose.

A month before the expiration of the option agreement, on June 1, 2016, Alliance entered into a purchase and sale agreement of the properties with McGinley Square, which agreed to pay-off the $2.1 million loan from JCB and pay about $800,000 to Alliance for improvements to the properties at closing. In addition, Cedar Lane loaned Alliance $50,000, which was due July 1, 2016, with the agreement that in the event of default, Alliance would pay "costs of collection, including reasonable attorneys' fees[.]"

4

On June 2, 2016, McGinley Square provided $2,095,748.24 to Alliance, which Alliance wired to JCB to pay off the loan from Seaview Capital and JCB. The next day, JCB "rejected the payoff and refused to discharge the . . . loan because the money came from McGinley [Square], rather than Alliance." The $2.1 million Alliance transferred to JCB as a complete payment for the loan was deposited in a trust account held by Seaview Capital and JCB's counsel since there were no instructions on how to wire it back to Alliance.

On June 6, 2016, JCB exercised its option to purchase Alliance's properties. The same day, Alliance filed an order for JCB to show cause for refusing the loan payment.

On October 18, 2016, the first court,[1] issued a temporary restraining order (TRO) requiring the $2.1 million to stay in the trust account held by Seaview Capital and JCB's counsel. For reasons explained in its twenty-page written decision, the court at that time: (1) directed JCB to discharge the May 2, 2016 mortgage of $2.1 million; (2) denied Alliance's claims that the option contract with JCB was void as unenforceable; and (3) granted JCB and Seaview Capital's

---

[1] For the sake of clarity, we use the term "first court" and later "second court" because the second court took over due to the first judge's retirement in July 2018.

A-1018-18T3

summary judgment request and required performance of the option contract by Alliance.

In compliance with the TRO, JCB discharged Alliance's mortgage, but retained the $2.1 million paid to Alliance by McGinley Square by holding it in their counsel's trust account because JCB determined it "would pay McGinley Square back when [JCB] and Alliance closed on their deal." Subsequently, Alliance and JCB entered into a modified option contract where a new closing date of January 31, 2017 was set, and changes were made to the payment terms and which properties were to be sold.

Meanwhile, plaintiffs filed the within complaint on June 5, 2017 seeking: (1) specific performance compelling Alliance to sell the properties to McGinley Square pursuant to the purchase sale agreement; (2) injunctions against Alliance for selling the properties to JCB; (3) a declaratory judgment that the purchase sale agreement is valid and the option to purchase has expired; (4) an award of damages based on breach of contract for the purchase sale agreement by Alliance and for the outstanding balance of the $50,000 loan made by Cedar Lane; (5) an award of damages based on the principle of unjust enrichment because the funds provided by Levy to Alliance, Seaview Capital, and JCB "would not have otherwise [been] received had [Alliance, Seaview Capital, and JCB] not engaged

in extra-contractual conduct . . . preventing McGinley [Square] from purchasing" the properties.

Although the environmental concerns and the federal lien were resolved by August 2017, the parties contended closing was held up by the first court's June 21, 2017 order granting temporary restraints, as well as the lis pendens filed by plaintiffs. After discovery concluded, the parties cross-moved for summary judgment for specific performance and Alliance, Seaview Capital, and JCB sought summary judgment to dismiss the remainder of plaintiff's claims.

On December 14, 2017, the first court affirmed its October 18, 2016 order declaring the option contract between Alliance and JCB enforceable and excluding McGinley Square's competing contractual claims under the purchase sale agreement with Alliance. The court also: (1) denied plaintiffs' request for specific performance of the purchase sale agreement between Alliance and JCB; (2) denied plaintiffs' application for interest on the $2.1 million it paid to Alliance under the purchase sale agreement held by JCB in the trust account; (3) granted plaintiffs' claim for judgment on the $50,000 Cedar Lane loan to Alliance and ordered Alliance to pay it in full following the closing; (4) ordered Alliance and JCB to close on the transfer of properties to JCB by January 31, 2018; (5) discharged the June 21, 2017 TRO; (6) denied plaintiffs' application

for preliminary injunctive relief; and (7) ordered that upon the closing, JCB was required to pay McGinley Square the $2.1 million without interest.

In its fifteen-page opinion accompanying the order, the first court explained that "[i]n the event the closing does not take place on or before January 31, 2018, [p]laintiffs are given leave to file a motion for reconsideration [of] the [c]ourt's denial of interest on the . . . [$2.1 million loan from McGinley Square] and fees and costs on the collection of the Cedar Lane loan."

Plaintiffs appealed the order. Their motion to stay the order was denied by the first court, and after this court granted an interim two-week stay, the Supreme Court denied their emergent application. During the interim stay, Alliance, Seaview Capital, and JCB were prevented from obtaining title insurance as required under the option agreement for marketable title, and thus alleged they were prevented from completing the sale. Subsequently, Seaview Capital sent a letter to the court requesting that the court extend the deadline for closing until all appeals were exhausted. Plaintiffs opposed the request.

On February 9, 2018, the first court reversed its order regarding the closing date by extending the deadline until all appeals were resolved since plaintiffs appealed the December 14, 2017 order. Additionally, the court's order stated, "[n]othing in this [o]rder shall prevent Seaview [Capital] or Alliance

from closing their transaction prior to the exhaustion of all appeals taken with respect to the December 14[, 2017] [o]rder, if Seaview [Capital] is able to secure title insurance . . . , or if Seaview [Capital] elects to waive that requirement."

While plaintiffs' appeal of the December 14, 2017 order was pending, and after all of the parties had filed their briefs and responses, on June 22, 2018, plaintiffs settled their dispute with Seaview Capital and JCB. The settlement agreement gave McGinley Square assignment of all of the rights, title, claims, and interests held by Seaview Capital and JCB as to the modified option agreement with Alliance, the properties, and all of the previous orders and litigations. The amount plaintiffs paid to Seaview Capital and JCB was subject to non-disclosure. On the same day, plaintiffs dismissed their appeal as to Seaview Capital and JCB and continued to pursue claims against Alliance.

Following the settlement and the dismissal of certain claims, plaintiffs, through the rights assigned by Seaview Capital and JCB, filed a Rule 1:10-3 motion for relief in aid of litigant's rights and a motion for reconsideration of the December 14, 2017 order denying interest on the $2.1 million payoff held in escrow and costs associated with the $50,000 Cedar Lane loan. Additionally, it sought:

(a) An [o]rder declaring Alliance to be in violation of the [o]rders and the [o]rder entered by this [c]ourt on October 18, 2016 by failing to close;

(b) An [o]rder declaring Alliance to be in breach of the [JCB] Agreement, which was assigned by Seaview [Capital] to McGinley [Square] on June 22, 2018, by failing to close;

(c) An [o]rder requiring Alliance to close with [p]laintiffs on the [p]roperties pursuant to the [JCB] Agreement, subject to any modifications contained in such order to be entered by the [c]ourt or mutually agreed by the parties, no later than August 1, 2018, with time being of the essence as to that date;

(d) An [o]rder vesting title to the [p]roperties in McGinley [Square], requiring Alliance to immediately deliver a deed to the [p]roperties, and entering monetary damages to [p]laintiffs if Alliance fails to close by August 1, 2018;

(e) An [o]rder requiring Alliance to pay [p]laintiffs' reasonable attorneys' fees and costs for making this [m]otion pursuant to [Rule] 1:10-3;

(f) An [o]rder awarding [p]laintiffs their costs of collection on the $50,000 [Cedar Lane] [l]oan, which costs encompass all reasonable legal fees and costs incurred since June 5, 2017, subject to the terms contained in the [p]roposed [o]rder;

(g) An [o]rder awarding [p]laintiffs interest on the $2.1 [m]illion [p]ayoff at a rate of 12% per annum for the period of June 2, 2016 through the date of the entry of such order;

(h) An [o]rder awarding [p]laintiffs unpaid rent for the period of June 2, 2016 through the date of the entry of such order, in the amount of $45,000 per month;

10

(i) An [o]rder awarding [p]laintiffs reasonable attorneys' fees and enforcement costs pursuant to §13.2 of the [o]ption [a]greement and pursuant to the [m]utual [r]elease executed by Alliance and Seaview [Capital] on December 12, 2016;

(j) An [o]rder modifying the [p]urchase [p]rice of the Jersey City Bergen [sic] pursuant to such order;

(k) An [o]rder requiring Alliance to place $200,000 in escrow at closing for environmental remediation;

(l) An [o]rder entering any additional or alternative relief that the [c]ourt deems just, including the additional relief set forth in the [p]roposed [o]rder[.]

With a second court hearing the motion, the motion was denied "for the reasons set forth on the record on August 3, 2018."[2] This appeal, Alliance represented by new counsel, ensued.

Following a mandatory appellate case management conference, we remanded plaintiffs' applications "to enforce prior orders of the court from December 14, 2017 and February 9, 2018, and a determination of amounts due, if any, under prior agreements entered into by the parties of their assignors[;]" and "for interest and counsel fees pursuant to the reservation of reconsideration of such an application as contained in the December 14, 2017 order of the court."

---

[2] The transcript of this proceeding is not part of the record provided. Alliance contends in its merits brief, the second court believed it lacked jurisdiction to compel closure while an appeal was still pending with our court.

On remand, plaintiffs renewed their motion to enforce litigant's rights and compel a closing. On October 12, 2018, the second court, without any legal conclusions, set forth its decision on the record stating: (1) Alliance had not yet violated the order to close due to the appeal, but since the appeal had been remanded, the court set a new closing date of November 20, 2018; (2) plaintiffs were "entitled to enforce whatever rights that may have ripened . . . "; (3) Alliance shall pay $1500 per day as "reasonable rent [for] occupancy" each day closing does not occur after November 20, 2018; (4) Alliance shall pay the cost of collection on the loan from Cedar Lane and any related attorney's fees and costs; (5) Alliance had not attempted to repay any of the $2.1 million loan made by Seaview Capital, and Alliance shall pay interest on the loan at twelve percent per annum from June 2, 2016 to the date of the order as equitable relief; (6) Alliance had an obligation to pay rent on the properties; (7) plaintiffs were entitled to attorney's fees and enforcement costs for "the [modified] option agreement and the mutual release executed on December 12[], 2016[;]" and (8) the request by plaintiffs to appoint a statutory and custodial receiver was denied, but would be considered at a later time if payment was not made.

Following the ruling, plaintiffs moved for payment of attorneys' fees and costs. Their attorney submitted a certification of services requesting payment

12

of $462,430.86, consisting of $65,695.86 in costs and $396,735.00 in fees related to both the collection of the $50,000 Cedar Lane loan and the enforcement of the agreement concerning the $2.1 million pay-off by McGinley Square. In the written decision accompanying its order, the second court explained the total allowable fees were $287,373.50, increased by a lodestar enhancement of $100,580.72 of fees under Rendine v. Pantzer, 141 N.J. 292 (1995). Thus, Alliance was ordered to pay plaintiffs a total sum of $389,388, with $387,954.22 in fees and $1,433.68 in costs.

On January 25, 2019, because the closing had not yet occurred, the second court ordered Alliance to respond to plaintiffs' information subpoena within ten days or it would issue a warrant for the arrest of Alliance's two principals. In a subsequent order that same day, the court found Alliance had "willfully and contumaciously violat[ed] the October 12, 2018 [o]rder[.]" The court also ordered the parties to close by January 31, 2019, and provided that failure to do so would lead to the appointment of a receiver for Alliance and an issuance of a warrant for the arrest of Alliance's two principals. The court awarded plaintiffs reasonable attorney's fees and costs associated with the filing of the motion leading to the order. On January 30, 2019, Alliance and plaintiffs, through the rights assigned to them by Seaview Capital and JCB, closed on the properties.

On February 19, 2019, the second court issued an order awarding attorneys' fees and costs pursuant to its January 25, 2019 order. The court ordered Alliance, within thirty days of the order, to pay plaintiffs' attorneys $3,798.50, which consisted of $3,748.50 in legal fees and $50.00 in costs, to pay plaintiffs an additional $23,665, representing the realty transfer fees Alliance refused to pay at closing, and to pay plaintiffs $106,500 because Alliance was found to have failed, by seventy-one days, to close by the November 20, 2018 date required in the court's October 12, 2018 order. Alliance expanded its appeal to include aspects of the second court's post-remand decision.

II.

Initially, we address Alliance's contention that the second court erred in its October 12, 2018 order by reversing the first court's December 14, 2018 order holding plaintiffs were not entitled to interest under the doctrine of equitable conversion on the $2.1 million held in escrow by JCB's counsel that Alliance, by agreement with plaintiffs, tendered to pay off its loan from JCB.

Plaintiffs were not entitled to contractual interest on the $2.1 million based upon the terms of an agreement, therefore the second court's award of interest was an exercise of its equitable powers to sanction Alliance because it determined Alliance benefited from not paying plaintiffs the funds, nor paying

a mortgage or rent for its use of the properties during the court's proceedings. See Consol. Police & Firemen's Pension Fund Comm'n v. City of Passaic, 23 N.J. 645, 652 (1957) ("Chancery considers the equities of the case" in determining whether to award interest); Tobin v. Jersey Shore Bank, 189 N.J. Super. 411, 414 (App. Div. 1983) ("[T]he trial court is vested with broad discretion to allow prejudgment interest in accordance with equitable principles."). Thus, we must determine whether that discretion was misapplied.

The first court held:

> The doctrine of equitable subrogation is usually reserved for situations in which one lender pays off the balance of a prior mortgage and thus takes the place of that prior lender. See e.g. Equity Sav. & Loan Ass'n v. Chicago Title Ins. Co., 190 N.J. Super. 340, 342 (App. Div. 1983). However, our courts have recognized that some purchasers who satisfy outstanding liens and mortgages may take priority over those other lien and mortgage holders. See Gutermuth v. Ropiecki, 159 N.J. Super. 139, 146 (Ch. Div. 1977). Here, the doctrine of equitable subrogation is inapplicable as [p]laintiffs' rights in the properties were terminated with the exercise of the [o]ption [a]greement[,] which occurred only several days after [McGinley Square] transferred the $2.1 million to [Alliance] to pay off the [JCB] loan. Therefore, [p]laintiffs have no standing to base their claim for equitable subrogation on the failure of [Alliance] to pay [JCB] mortgage payments or interest in the period between when [plaintiffs] paid off the [o]ption [a]greement mortgage and this [c]ourt's order that the mortgage be discharged.

15

In superseding and essentially reversing the first court's order, the second court justified the award of interest by holding:

> The seventh request is an order awarding the [plaintiffs] interest on the $2.1 million loan at a rate of 12 percent per annum for the period June 2[], 2016 through the date of the entry of this order. This [c]ourt finds that Alliance has not even attempted at all to repay the loan that has . . . benefited them . . . . The obligations created under the note and the mortgage absolutely permit this relief. The plaintiff[s] ha[ve] been deprived of the use of this money that it never intended to be an interest-free obligation by the fact that its substantial interest rate was negotiated between the parties. Equity requires that the matter be enforced. Therefore, the request for interest on the $2.1 million loan at a rate of 12 percent per annum for the period of June 2[], 2016 to the current date, will be granted.

The second court did not discuss the first court's contrary December 2017 ruling on this issue. Examining the second court's reasoning as to the interest, we conclude it mistakenly applied its discretion, as it lacked both factual and legal support for its determination. Apparently, the second court invoked the concept of unjust enrichment. To prove an equitable claim for unjust enrichment, a party must demonstrate that the opposing party "received a benefit and that retention of that benefit without payment would be unjust." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)); See Cox v. RKA Corp., 164 N.J. 487,

16

495 (2000) (the judicially created doctrine of equitable conversion rests on the concept of promoting equity between the contracting parties). Yet, the second court did not adequately illuminate that reasoning and identify what cognizable benefits Alliance gained with the money held in escrow by JCB counsel under court order. Furthermore, the second court did not appear to take into account that the funds were not a loan to Alliance but given to them to transfer to JCB as part of a purchase of the properties; no mortgage or note with an interest rate was issued.

The first court correctly found the delay in closing on the sale of the properties, and thus the delay in repayment of the $2.1 million to plaintiffs, was reasonable and "not the source of any unjust enrichment to plaintiffs' detriment." The first court correctly recognized the closing delay was attributable in part to plaintiffs' successful application restraining Seaview Capital's right to purchase the properties as set forth in the June 21, 2017 order. The closing was additionally stymied by Alliance's inability to convey clear title due to plaintiffs' initial appeal leading to our remand. We see no cause to dispute the first court's factual findings, nor did the second court address them. And plaintiffs' arguments in support of unjust enrichment are without merit.

A-1018-18T3

From our perspective, the first court's ruling is legally sound and consistent with the record facts. The court properly rejected application of the doctrine of equitable subrogation because – as Alliance contends – this is not a situation where "a new mortgagee [should] enjoy the priority afforded the old mortgagee, where the new mortgagee lacked knowledge of other encumbrances." Alliance never gave a mortgage to plaintiffs, and plaintiffs never received a mortgage when McGinley Square issued the $2.1 million to Alliance to pay off JCB. The funds were intended, and used for, plaintiffs' purchase of Alliance's properties.

Moreover, as Alliance also points out, in the court's December 14, 2017 order, it determined any rights plaintiffs may have acquired when the funds were wired to JCB's counsel were terminated when JCB exercised its right under the option agreement. The first court's decision to apply equitable subrogation was left to its sound discretion, and we see no basis to substitute our judgment for the court's, given there was no clear abuse of discretion. See Ocwen Loan Servs., LLC v. Quinn, 450 N.J. Super. 393, 397 (App. Div. 2016). We find it telling that at no point did any party to this action ever request that such a large amount of funds be placed in an interest-bearing account. Plaintiffs' arguments in support of equitable subrogation are without merit.

In sum, the second court did not provide the basis for its reasoning with necessary specificity to the legal principles or facts in the record, thus we are constrained to conclude its order reversing the first court's order and requiring Alliance to pay interest on the $2.1 million held in escrow was a misapplication and arbitrary use of discretion.

## III.

Next, we address Alliance's argument that the February 19, 2019 order incorrectly granted, both plaintiffs' request for attorneys' fees and costs and, sua sponte, a fee enhancement for enforcement of the closing and collection of the Cedar Lane loan. We partially agree.

> Although New Jersey generally disfavors the shifting of attorneys' fees, North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999), a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract. Dep't of Envtl. Prot. v. Ventron, 94 N.J. 473, 504 (1983).
>
> [Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440 (2001).]

We afford substantial deference on appeal to fee determinations of a trial court. Id. at 444. "[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386

19

(2009) (quoting Packard-Bamberger, 167 N.J. at 443-44; Rendine, 141 N.J. at 315).

We conclude the second court was within its discretion to shift attorneys' fees and costs for the enforcement of the properties' closing, a right held by plaintiffs through the assignment purchased from Seaview Capital and JCB. However, Alliance correctly challenges the portion of attorneys' fees and costs related to actions by Seaview Capital and JCB prior to the assignment. Seaview Capital and JCB never sought judicial relief to enforce their rights to close on the purchase of the properties, so plaintiffs can make no legitimate claim they are entitled to fees or costs associated with those rights. It was not until the assignment that plaintiffs had any rights to enforce the JCB modified option agreement and to acquire the properties. Because plaintiffs should only be reimbursed for attorneys' fees and costs related to the entry of the October 12, 2018 order and the award did not distinguish the exact dates or activities for which fees and costs were ordered, a remand is necessary for the court to reexamine plaintiffs' submission and enter an order exclusive of attorneys' fees and costs related to Seaview Capital and JCB's efforts to purchase the properties.

As for the October 12, 2018 order's requirement that Alliance pay plaintiffs' attorneys' fees and costs related to efforts to collect on the Cedar

Lane loan, we have no issue with that determination. Alliance defaulted on the loan by not paying it off by July 1, 2016 per the agreement. The clear terms of the loan allow for collection costs, including attorneys' fees and costs, to be paid by the defaulting party. The fact the closing date set forth in the December 14, 2017 order was postponed due to pending appeals and the new closing date remained unmet when the October 12, 2018 order was issued does not allow Alliance to escape responsibility for plaintiffs' attorneys' fees and costs when Alliance did not pay off the Cedar Lane loan until January 30, 2019, when the closing was held. A remand, however, is necessary because, like the attorneys' fees and costs related to the enforcement of the closing, the order does not delineate the attorneys' fees and costs related to plaintiffs' collection efforts on the Cedar Lane loan.

## IV.

Lastly, we address Alliance's contention the February 19, 2019 order was factually and legally erroneous. The order required Alliance to pay plaintiffs $106,500 based upon a daily sanction of $1500 when Alliance closed seventy-one days after the November 20, 2018 deadline set forth in the October 4, 2018 order.

Without citing to the record, Alliance asserts the sanction was motivated by the second court's erroneous belief in plaintiffs' misleading statements that Alliance openly defied the court's previous court. Alliance contends the closing date was not set until the October 12, 2018 order; thus, it was not in violation of previous court orders. Alliance contends the order was a response to plaintiffs' motion to enforce litigant's rights, which is "limited to remediation of the violation of a court order," Abbott ex rel. Abbott v. Burke, 206 N.J. 332, 371 (2011), and it should "not [be] for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order," Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997).

Alliance's arguments are unavailing. Despite the order's lack of express justification, the sanctions were obviously a coercive measure by the court to encourage Alliance to properly close by imposing a financial disincentive for selling the properties after the court ordered date of November 20, 2018. See Franklin Twp. Bd. of Educ. v. Quakertown Educ. Ass'n, 274 N.J. Super. 47, 55 (App. Div. 1994) (holding the imposition of a reasonable monetary sanction is "an entirely proper tool to compel compliance with a court order"). Given Alliance's failure to establish this sanction was arbitrary and capricious, we conclude the court did not abuse its discretion in sanctioning Alliance. See Wear

22

v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018) (holding we review of a trial court's order enforcing litigant's rights under an abuse of discretion standard); Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (ruling an abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'") (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We discern no need to remand this issue to the trial court for further analysis because the legitimate purpose of the sanctions is manifest.

Any arguments raised that we have not addressed are because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1018-18T3