IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

In re the Matter of:

CHRISTIE KELLY,
*Petitioner/Appellee/Cross-Appellant,*

*v.*

GARRETT C. KELLY,
*Respondent/Appellant/Cross-Appellee.*

No. 1 CA-CV 20-0441 FC
FILED 11-16-2021

———————————————

Appeal from the Superior Court in Maricopa County
No. FC2018-093985
The Honorable Suzanne Scheiner Marwil, Judge

**VACATED IN PART; REVERSED IN PART; AND REMANDED**

———————————————

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Kristi A. Reardon
*Counsel for Petitioner/Appellee/Cross-Appellant*

Bishop Del Vecchio & Beeks Law Office, PC, Phoenix
By Daniel P. Beeks
*Counsel for Respondent/Appellant/Cross-Appellee*

**OPINION**

Judge David D. Weinzweig delivered the opinion of the Court, in which Presiding Judge Peter B. Swann and Judge Paul J. McMurdie joined.

W E I N Z W E I G , Judge:

¶1　　　At issue in this appeal is whether and how the superior court may impose evidentiary sanctions in custody litigation against a parent who defies its orders to cooperate in a Comprehensive Family Evaluation ("CFE").

¶2　　　Mother and Father are parents of a minor child. Mother petitioned to dissolve the marriage, requesting sole legal decision-making authority over the child. At her request, the superior court appointed a series of behavioral health evaluators to perform the CFE, and ordered both parties to cooperate. Father refused. He did not cooperate with the first evaluator, who resigned, and then refused to cooperate with the replacement evaluator. After repeated warnings, the court sanctioned Father, precluding him from presenting any evidence at trial that he could have presented to the CFE evaluators, and preventing him from questioning any witnesses on topics he might have discussed with the evaluators. After a lopsided trial, the court awarded Mother sole legal decision-making authority.

¶3　　　Father contends this was error. We agree. The superior court must consider all relevant, admissible evidence bearing on a child's best interests. A parent's myopic and combative litigation tactics cannot deprive his daughter of a well-informed custody decision anchored in the child's best interests. We vacate the court's legal decision-making and parenting-time orders, along with the attorney fees award, and remand for a new trial. Additionally, we reverse the court's allocation of $32,500 of Father's retirement assets to Mother, and remand for the court to redistribute those funds to Father.

**FACTS AND PROCEDURAL BACKGROUND**

¶4　　　Garrett Kelly ("Father") and Christie Kelly ("Mother") married in 2014 and have one daughter, born in 2015. Mother petitioned for divorce in June 2018, requesting sole legal decision-making authority, alleging "[s]ignificant domestic violence has occurred during the

marriage." Father denied any domestic violence and sought joint legal decision-making.

## I.     Comprehensive Family Evaluation

¶5         Soon thereafter, Mother asked the superior court to order a CFE into her domestic violence allegations. Father objected, arguing a CFE was unnecessary. Between January and July 2019, the court appointed three evaluators to perform the CFE, the second of whom recused because of a conflict. Each appointment order instructed the parties to cooperate and "promptly provide[] all records, reports, and documents requested" by the forensic evaluator. But each time, Father hindered and ultimately foiled the evaluator's efforts.

¶6         The superior court first appointed Dr. David Weinstock, a clinical psychologist, in January 2019. Dr. Weinstock was tasked to evaluate the domestic violence issues and offer "legal decision-making recommendations." Father did not cooperate with Dr. Weinstock. He refused to submit "paperwork" to Dr. Weinstock in early March and refused to pay his share of the evaluator's retainer in late March. As a result, the court reiterated that Father must comply, set deadlines for his compliance and threatened sanctions for non-compliance. In April, the court ordered Father "to participate with" Dr. Weinstock, warning that "[s]hould [Father] fail to do so, he will be precluded from introducing any evidence he could have brought to [the CFE evaluator] to be included in the [CFE]." By late May, however, Father still refused to cooperate, and Dr. Weinstock wanted out of the case. The court released Dr. Weinstock from his appointment.

¶7         Just weeks later, the superior court told the parties it would appoint another CFE. Father, unrepresented after his attorney had withdrawn, argued the court should not appoint a replacement CFE evaluator because "[t]here is so much insurmountable fake evidence." But the court remained firm, emphasizing that both parties must participate or it would impose sanctions:

> What cannot happen, again, is that people don't participate with the family evaluator, so it doesn't go forward. Because, ultimately, if that happens, then I'm going to exclude the evidence that you could have provided to the family court evaluator. And I'm doing that because . . . the family court evaluator is for both parties' benefit.

¶8            The court appointed Dr. Julie Skakoon as the new CFE evaluator to probe the two issues previously assigned to Dr. Weinstock and two more issues requested by Father: "[c]hild maltreatment allegations" and the "[f]itness of both parents." And again, the court warned that "both parties must participate in the [CFE]. If either party fails to participate, any evidence they could have presented to the evaluator at trial will be excluded."

¶9            Still, Father did not cooperate. And so, less than three weeks after appointing Dr. Skakoon, the court set a trial date and, without a hearing, levied sanctions against Father. The court explained:

> The court received an update . . . from Julie Skakoon documenting father's non-participation in the [CFE]. Based on this update and the court's prior July 2, 2019 minute entry, the court will set trial.

> [I]n as much as father appears to refuse, yet again, to participate in the CFE[,] father will be precluded from presenting any evidence at the trial that he could have prevented [sic] to Ms. Skakoon[.]

¶10            The court also "relieved [Dr. Skakoon] from her duty as an evaluator" because "a one-sided CFE would not provide the court with useful information."

## II.    Trial and Decree

¶11            A trial was held on February 11, 2020. Father was allowed to introduce only the evidence he provided or could not have provided to the evaluators. In all, the court admitted three of Father's exhibits, one of which concerned attorney fees. It did not allow Father to call any witnesses to testify about issues he could have raised with the evaluators. And, although Father testified, the court prevented him from talking about issues he could have raised with the evaluators.

¶12            By contrast, the court admitted 62 of Mother's exhibits. Mother's expert witness testified. And Mother herself testified, broadly describing her relationship with Father during the marriage and dissolution proceedings. Father was not allowed to cross-examine Mother on issues he could have raised with the evaluators.

¶13            A decree of dissolution followed. The court awarded sole legal decision-making to Mother, finding that Father committed domestic

violence, but awarded Mother and Father equal parenting time. The court also appointed a special master to investigate whether Father violated the preliminary injunction, entered upon Mother's petition for dissolution, by removing $65,000 from his IRA and, if so, to "apportion Mother an additional $32,500." The court awarded Mother her reasonable fees under A.R.S. § 25-324(A), finding that Father "acted unreasonably in the litigation."

¶14        The special master later concluded that Father removed $65,000 from the IRA, as alleged. He also concluded that Father owned $65,000 of the IRA as his sole and separate property. And yet, he recommended that Mother receive the "additional $32,500," which the court accepted.

¶15        Father timely appeals from the decree, challenging the superior court's evidentiary sanction, distribution of assets, admission of expert witness testimony and award of attorney fees. Mother timely cross-appeals the court's division of parenting time, domestic violence findings and denial of interest on her attorney fees judgment. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    Evidentiary Sanction

¶16        Father challenges the evidentiary sanction the court imposed against him for not cooperating with the CFE evaluators, arguing it deprived him and his daughter of their right to a custody decision grounded in the daughter's best interests. We review the sanction for an abuse of discretion. *Hays v. Gama*, 205 Ariz. 99, 102, ¶ 17 (2003).

¶17        As in *Hays*, the superior court here used its inherent contempt powers to sanction Father. Arizona courts "begin from the premise that contempt sanctions should generally be limited to 'the least possible power adequate to the end proposed.'" *Id*. (quoting *Ong Hing v. Thurston*, 101 Ariz. 92, 100 (1966)). This presumption is most significant when "a contempt sanction impacts an innocent third party," like the children of parents locked in custody battles. *Id*. ¶ 17-18.

¶18        A child's best interests reign supreme in custody disputes. *Id*. Arizona law directs the superior court to resolve issues of legal decision-making and parenting time "in accordance with the best interests of the child" and instructs the court to "consider all factors that are relevant to the child's physical and emotional well-being." *See* A.R.S. § 25-403(A). These

factors include "[t]he past, present and potential future relationship between the parent and the child," "[t]he interaction and interrelationship of the child with the child's parent or parents," "[t]he mental and physical health of all individuals involved," "[w]hich parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent," "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03," and "[w]hether one parent intentionally misled the court to cause an unnecessary delay, to increase the cost of litigation or to persuade the court to give a legal decision-making or a parenting time preference to that parent." *See* A.R.S. § 25-403(A). To that end, the superior court must strive to marshal, inspect and analyze the relevant and admissible evidence needed for it to reach a well-informed decision in the child's best interests. *Johnson v. Johnson*, 64 Ariz. 368, 370 (1946).

**¶19**    This bedrock requirement necessarily limits the superior court's otherwise broad authority to impose evidentiary sanctions. *Hays*, 205 Ariz. at 102-03, ¶ 18 (defining the issue as "whether the various contempt sanctions imposed by the superior court unnecessarily interfered with its duty to consider the child's best interests in determining custody"). Our supreme court has "cautioned" that "[w]hen custody of children is involved in a court proceeding, it seems to us to be the duty of the trial court to hear all competent [and admissible] evidence which may be offered." *Johnson*, 64 Ariz. at 370. The child's best interest remains paramount— whether (as in *Hays*) a parent disobeys a court order to bring a child to a particular therapist, or whether (as here) a parent disobeys a court order to cooperate with a behavioral health professional appointed to perform a CFE. *Hays*, 205 Ariz. at 104, ¶ 23. The superior court cannot sanction a parent in a way that prevents the court from considering admissible, "potentially significant information" about the child's best interests. *Id.* at 104, ¶¶ 21-22.

**¶20**    Because that happened here, we reverse. CFE evaluators and family courts need the same evidence to perform their jobs—documents and information on family functioning, parenting capacity, parent-child dynamics and a child's developmental needs.[1] Dr. Skakoon was appointed to study and author a report on "[f]itness of both parents," "legal decision-

---

[1]    *Compare* Order [of] Appointment of [Dr. Skakoon as] a Behavioral Health Professional (July 2, 2019) ("CFEs investigate long-standing and broadly-based issues of family functioning and parenting capacity," including parent-child dynamics, parenting capacity, and the child's developmental needs); *with* A.R.S. § 25-403(A) (listing eleven "factors that are relevant to the child's physical and emotional well-being").

making recommendations," "[c]oercive control/domestic violence," and "[c]hild maltreatment allegations." By excluding all documents and information that Father could have but did not provide to the CFE evaluators, the superior court prevented itself from seeing or hearing potentially significant evidence bearing on the daughter's best interests. The court's sanction thus violated the legislature's directive to "consider all factors that are relevant to the child's physical and emotional well-being," and reach a decision "in accordance with the best interests of the child." *See* A.R.S. § 25-403(A); *see also A.A. v. Ab.D.*, 228 A.3d 1210, 1227 (Md. App. 2020) ("Because the court did not explore what evidence Mother intended to offer, the court could not have known the significance of the proscribed evidence and its potential impact on its ability to determine the best interests of the children.").

**¶21** We do not question or discount the superior court's broad authority to sanction contemptuous parents in custody litigation. Tough sanctions are still available and appropriate. The superior court may, for instance, impose a progression of monetary sanctions on contemptuous parents, even incarcerating them after a finding of civil contempt. *See Hays*, 205 Ariz. at 104, ¶ 23; *Korman v. Strick*, 133 Ariz. 471, 473 (1982) (describing imprisonment as a sanction for civil contempt). But the myopic and combative tactics of intransigent parents cannot deprive their child of a well-informed custody decision anchored in the child's best interests. *See also Stapley v. Stapley*, 15 Ariz. App. 64, 70 (1971) ("[P]unishment of a parent for contempt is not to be visited on the children."). We encourage the superior court to exercise its inherent contempt authority in custody litigation to craft sanctions that preserve its ability to reach a well-informed custody decision based on the factors in Section 25-403 and "in accordance with the best interests of the child." A.R.S. § 25-403(A).

**¶22** Mother relies on *Johnson v. Provoyeur*, 245 Ariz. 239, 243, ¶¶ 14-21 (App. 2018), arguing it "clarified that *Hays* does not hold that a court commits error by precluding any information regarding the child's best interests." Mother's reliance is misplaced. To start, the sanctions issued there and here hinge on different authority. There, the superior court excluded the untimely supplemental report of a parent's expert witness in a custody dispute under Arizona Rules of Family Law Procedure ("ARFLP") 49(H) and 65(C)(1). *See id.* at 242, ¶¶ 9, 10. Here, the court sanctioned Father for not cooperating with the CFE evaluators under its inherent contempt powers. Also different is the scope and significance of the excluded evidence and what the courts did before entering the sanction. There, the superior court "admitted other relevant evidence" offered by the parent, and accepted the expert witness's original report, which "gave the

court sufficient information to assess the children's best interests." And there, the court first reviewed and then excluded the expert's supplemental report. *Id.* at 244-245, ¶¶ 17, 20. Here, the court excluded almost all of Father's evidence without first examining it or assessing its impact on the daughter's best interests.

¶23 Because the court's contempt sanction prevented it from determining the child's best interests in this custody dispute, we vacate the parenting-time and legal decision-making orders and remand for a new trial.

## II. Special Master Appointment

¶24 Father also contends the superior court improperly delegated its authority to a special master to resolve disputed facts over a retirement account. We interpret court rules de novo. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 167, ¶ 14 (App. 2004). The appointment of special masters in family law cases is governed by ARFLP 72 and 72.1. Rule 72(a)(1) permits a special master to be appointed if "the parties stipulate in writing or on the record in open court," and if the proposed special master is "an attorney or other professional with education, experience, and special expertise regarding the particular issues to be referred." ARFLP 72(a)(1). The appointment order may "not direct the master to perform services within the scope of Rule 74 or to otherwise make decisions or recommendations concerning legal decision-making or parenting time." ARFLP 72(b)(1)(B). Beyond that, however, "the master may determine any issues under A.R.S. Title 25 that could be presented to the assigned judge." *Id.*

¶25 The superior court did not err. It ordered the special master to "equitably divide the parties' retirement accounts pursuant to the terms of the Decree and all subsequent, relevant orders." The family court rules contemplate the appointment of special masters, and the court complied with those rules. Indeed, Father stipulated to the special master's appointment to "determine the community interest" in several retirement assets, including the IRA discussed in the next section.

## III. Retirement Account Add-On

¶26 Father argues the court erred by apportioning $32,000.00 from his IRA to Mother as recommended by the special master. As a threshold matter, however, Mother contends we lack jurisdiction to hear that issue because Father's pro per notice of appeal listed only the March 2020 dissolution decree and not the August 2020 Domestic Relations Order ("DRO"), which apportioned this sum. We disagree.

¶27        Arizona Rule of Civil Appellate Procedure 8(c)(3) requires an appellant to file a notice of appeal "[d]esignat[ing] the judgment or portion of the judgment from which the party is appealing."  Arizona courts disfavor technical challenges to a notice of appeal, and the "notice of appeal should be construed as sufficient" if "the record discloses an appellant's intent to appeal from a judgment," the "notice of appeal substantially complies with the Rules of Civil Appellate Procedure," and "the defect has neither misled nor prejudiced an opposing party." *See Hill v. City of Phoenix*, 193 Ariz. 570, 572-73, ¶ 10 (1999).

¶28        We have jurisdiction here.  First, the dissolution decree and DRO were components of the same judgment or determination—to discern and divide the separate and community property. *See Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 577, ¶ 19 (App. 2015) (concluding notice of appeal conferred jurisdiction when the non-specified orders "were all part of the same determination on the same claims").  The dissolution decree (1) ordered "the parties shall arrange to have any necessary [DRO] prepared by" the special master, (2) explained the court "shall reserve jurisdiction to enter the [DRO]," (3) directed the special master "to ascertain whether" Husband withdrew $65,000 from an IRA, and "if [he] did," (4) directed the special master to "apportion Mother an additional $32,000.00 from that account."

¶29        Second, Mother does not argue that Father's defective notice of appeal caused her prejudice.  And though his notice of appeal identified only the dissolution decree, Father's case management statement identified the decree and DRO as "the judgment/order you are appealing." *See Hill*, 193 Ariz. at 572-73, ¶ 11 ("[W]e have recognized that where the record discloses an appellant's intent to appeal from a judgment, . . . or where a notice of appeal substantially complies with the Rules of Civil Appellate Procedure, the notice of appeal should be construed as sufficient so long as the defect has neither misled nor prejudiced an opposing party.").  Accordingly, we have jurisdiction to decide the merits of Father's appeal under A.R.S. § 12-2101(A)(1) and (5)(a).

¶30        Turning to the merits, we review the superior court's adoption of the special master's recommendation for clear error.  Ariz. R. Fam. L. P. 72(h).  The court found that Father owned $65,000 in the IRA as his separate property, but still awarded Mother "an additional add-on" of $32,500 because Father "withdrew $65,000 from [the account] in December 2019 without her permission and in violation of the preliminary injunction."  This was clear error.  The injunction prohibited the parties "from transferring, encumbering, concealing, selling, or otherwise

disposing of any of the joint, common or community property of the parties." Mother conceded the IRA "likely" contained $65,000 in Father's separate property, and the special master agreed. At most then, Father withdrew $65,000 of his sole and separate property, which the injunction did not restrict. We reverse and remand for the court to reapportion $32,500 from Mother to Father.

## CONCLUSION

¶**31** We vacate the parenting-time and legal decision-making orders in the dissolution decree, along with the attorney fee awards, and remand for the superior court to conduct appropriate proceedings. We also reverse and remand for the court to redistribute $32,500 in assets from Mother to Father.[2]



AMY M. WOOD • Clerk of the Court
FILED:     AA

---

[2] Because we reverse the legal decision-making and parenting-time orders, we do not address the ancillary parenting issues.