NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TONISHA J., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, N.M., J.M., C.J., *Appellees*.

No. 1 CA-JV 22-0132
FILED 2-23-2023

Appeal from the Superior Court in Maricopa County
Nos. JD538480
JS520225
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

APPEARANCES

Tonisha J., Phoenix
*Appellant*

Arizona Attorney General's Office, Mesa
By Catherine Leisch
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Maurice Portley[1] delivered the decision of the court, in which Vice Chief Judge David B. Gass and Judge Brian Y. Furuya joined.

---

**P O R T L E Y**, Judge:

**¶1**        Tonisha J. (Mother) appeals the termination of her parental rights to three of her biological children, C.J., J.M., and N.M.[2]  She challenges the superior court's finding that the Department of Child Safety (DCS) was not required to provide reunification services under Arizona Revised Statutes (A.R.S.) section 8-846(D)(1)(d).  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        This court views the evidence, and reasonable inferences drawn from it, in the light most favorable to sustaining the superior court's decision.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

**¶3**        The children range in age from four to twelve.  In May 2021, Mother took C.J., then three years old, to the pediatrician because the child was very tired after exposure to someone with COVID-19.  The pediatrician told her to take C.J. to the hospital, where it was found the child had life-threatening conditions.  Specifically, the child had low oxygen levels requiring intubation, and it was later determined that she had multiple bone fractures, previous untreated fractures, brain hemorrhages, and a lacerated liver.

**¶4**        The doctor overseeing C.J.'s treatment also testified C.J. "had suffered from chronic, severe malnutrition."  Mother argues that C.J.'s fractures came from Rickets and playing in a bouncy house.  The doctor testified even though C.J. may have developed Rickets from malnutrition,

---

[1]  The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to article VI, section 3, of the Arizona Constitution.
[2]  The children were also found dependent as to their fathers, and the fathers are not parties to this appeal.

the disease would not have explained C.J.'s rib fractures. Mother claims she does not know what caused C.J.'s other injuries and maladies.

¶5        Based on the medical findings and an interview with Mother, the medical team suspected C.J. was the victim of child abuse and neglect, and contacted DCS. DCS responded and began its investigation, including of Mother's home. Based on its findings at the house, DCS removed J.M. and N.M., both autistic and non-verbal children.[3] C.J. remained in the hospital.

¶6        J.M., then eight, and N.M., then nine, exhibited behavioral issues while in their initial placement with non-family caregivers. Specifically, they engaged in self-harming acts, as well as hitting others. In fact, both children were taken to an emergency department at one point because of their behaviors and caregivers' inability to calm the children.

¶7        DCS filed a petition for dependency as to the three children and, alleging abuse and neglect, filed a motion for court approval that it was not required to provide Mother with reunification services under A.R.S. § 8-846(D)(1)(d). Mother objected and requested visitation. The superior court held an evidentiary hearing in July 2021, and subsequently granted DCS's motion and denied Mother's request for visitation. In September 2021, DCS filed a petition to terminate mother's parental rights as to the three children.

¶8        The superior court held a simultaneous dependency and termination hearing during February and March 2022. The court heard testimony from two DCS investigators, Mother, a DCS child safety expert, and the doctor who oversaw C.J.'s hospital treatment. The court also received numerous exhibits detailing the children's medical history and diagnoses. The court subsequently, in signed minute entries dated May 9, 2022, found the children dependent, ordered the case plan to change to termination and adoption, and terminated Mother's parental rights as to the three children.

¶9        Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

---

[3] Four of her children resided in the home with Mother. The superior court granted DCS's motion to dismiss the fourth child from the case after that child was placed with her biological father.

**ANALYSIS**

**I. This court will address the issues raised on appeal.**

**¶10** DCS argues Mother waived and abandoned her claims by not complying with ARCAP 13 and not citing to the record or supporting legal authority. Though this court could deem her failure an abandonment of her appeal, in the exercise of our discretion, we will address the merits of the issues raised on appeal, *see Bugh v. Bugh*, 125 Ariz. 190, 191 (App. 1980), especially given the need to resolve what is in the best interests of the children. *See Kelly v. Kelly*, 252 Ariz. 371, 375, ¶ 18 (App. 2021) (stating that determinations must be made for the best interests of the children).

**¶11** DCS also argues Mother waived any challenge to the order excusing DCS from providing reunification services, including visitation, because she did not file a special action or appeal that order. A final order granting DCS's request not to provide services is appealable. *See Francisco F. v. Ariz. Dep't of Econ. Sec.*, 228 Ariz. 379, 381, ¶ 7 (App. 2011). Here, however, because the superior court's order was unsigned, it was not an appealable final order. Ariz. R.P. Juv. Ct. 104(A)[4] (parties may only appeal final orders "in writing and signed by the judge"). The order became appealable only after the superior court filed its signed termination order on May 10, 2022. Because Mother filed a timely appeal from the termination order, which included the A.R.S. § 8-846(D) order, we have jurisdiction over that issue.

**II. DCS was not required to provide reunification services pursuant to A.R.S. § 8-846(D).**

**¶12** Mother argues the superior court erred when it granted DCS's motion requesting to be excused from providing reunification services.

**¶13** Generally, the superior court must find DCS provided reasonable reunification services before terminating parental rights. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 581, ¶ 18 (2021). But the superior court can order that DCS not provide those services if it finds by clear and convincing evidence that the parent caused or "reasonably should have known that another person caused . . . a child to suffer serious physical injury or emotional injury." A.R.S. § 8-846(D)(1)(d).

---

[4] Arizona Rule of Procedure for the Juvenile Court 104(A) was amended on July 1, 2022, but no relevant changes occurred. *See* Ariz. R.P. Juv. Ct. 601(a)–(b).

**¶14**        Here, DCS alleged abuse and neglect in seeking permission to not provide reunification services, including visitation.  And in granting the motion, the superior court found by clear and convincing evidence that Mother caused, or should have known someone else caused, the physical and emotional injuries to C.J. discovered by medical authorities.  Although Mother argues the child had Rickets and this disorder could have been the cause of her extensive injuries, the court did not find the argument credible, and this court will not reweigh the evidence.  *See Sheena W. v. Dep't of Child Safety*, 85 Ariz. Cases Dig. 4, 7, ¶ 12 (App. Dec. 8, 2022).  Additionally, the court considered the fact that J.M. and N.M. had significant behavioral issues and also showed signs of self-harm.   On this record, Mother has not shown the superior court erred in finding DCS was not required to provide her with visitation or other reunification services.

### III.    Reasonable evidence supports the superior court's termination of Mother's parental rights as to C.J., J.M., and N.M.

**¶15**        A superior court may terminate parental rights if clear and convincing evidence establishes at least one statutory ground and if a preponderance of the evidence shows termination is in the child's best interests.  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).  Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order.  *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).  This court does not reweigh the evidence and defers to the superior court's factual findings.  *See id.*

**¶16**        To justify termination of parental rights under A.R.S. § 8–533(B)(2), DCS must prove a parent has neglected or willfully abused a child.  "[A]buse includes serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child."  A.R.S. § 8–533(B)(2).

**¶17**        Mother denies abusing and neglecting her children and argues the superior court erred in terminating her parental rights.  In its detailed minute entry, the superior court considered the record and testimony presented and found Mother "willfully abused [C.J.] by inflicting serious physical and emotional injury."

**¶18**        The court also found J.M. and N.M., both nonverbal, autistic children, "had significant scarring all over" their bodies and other signs of

neglect when they were removed and put in placement. Moreover, both were "completely reliant on a caregiver for all their needs," and Mother had not signed the children up for any services appropriate for their developmental delays and other needs. And though N.M. remains non-verbal, J.M. has begun to speak a few words since entering care. The record supports the court's findings, and we find no error.

**IV. The superior court properly found termination was in the children's best interests.**

**¶19** Mother also argues termination is not in the children's best interests because the court failed to provide her "a finite window of opportunities for remediation." However, the superior court considered the full record presented at trial and found that "the children have made slow but steady progress in their behaviors and milestones since being out of Mother's care," and termination would provide them with "a safe and stable home free of abuse and neglect." The record supports the findings.

**CONCLUSION**

**¶20** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA