IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MARINA FADLON, *Petitioner/Appellant*,

*v.*

JACK CLEVERLY, *Respondent/Appellee*.

No. 1 CA-CV 25-0321 FC

FILED 03-06-2026

Appeal from the Superior Court in Maricopa County
No. FC2024-000988
The Honorable Melissa Zabor, Judge

**APPEAL DISMISSED IN PART; AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

The Ber Law Firm, Phoenix
By Hershel Ber
*Counsel for Petitioner/Appellant*

Tiffany & Bosco PA, Phoenix
By Kelly Mendoza, Brendyn T. Edwards
*Counsel for Respondent/Appellee*

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie[1] and Judge Samuel A. Thumma joined.

**C A T T A N I**, Judge:

¶1 Marina Fadlon ("Mother") appeals from the decree dissolving her marriage to Jack Cleverly ("Father"), challenging portions of the decree itself and related rulings as well as a subsequent award of attorney's fees. Her appeal presents an array of issues, two of which prompted issuance of this opinion. *See* ARCAP 28(b).

¶2 First, we hold that an interlocutory ruling on enforceability of a premarital agreement, without more, resolves an *issue* but not a *claim* and thus may not properly be certified as immediately appealable under Rule 78(b) of the Arizona Rules of Family Law Procedure. *See infra* ¶¶ 19–25. Here, although the superior court included Rule 78(b) language in its pre-decree ruling that the parties' premarital agreement was enforceable, that certification was improper and did not make the ruling immediately appealable. We thus have jurisdiction to consider Mother's challenge to enforceability as part of her timely appeal from the later-entered decree itself.

¶3 Second, we consider the showing necessary to invoke Arizona's statutory authorization for a court to override a premarital agreement's spousal maintenance waiver when that waiver results in one party's eligibility for public assistance. *See* A.R.S. § 25-202(D); *see also infra* ¶¶ 35–40. Here, the superior court did not err by rejecting Mother's request to override a spousal maintenance waiver because she did not present sufficient evidence to (1) prove eligibility for public assistance or (2)

---

[1] Judge Paul J. McMurdie was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective December 31, 2025. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court designated Judge McMurdie as a judge pro tempore of the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

establish the amount of spousal maintenance that would be necessary to avoid such eligibility (if any).

¶4            Addressing the other issues Mother raises, we lack jurisdiction to consider the attorney's fees award in favor of Father and thus dismiss the appeal as to that ruling. We vacate the order that Mother pay 100% of the costs for a psychiatric evaluation and remand for reconsideration of that issue. We affirm in all other respects.

## FACTS AND PROCEDURAL BACKGROUND

¶5            Mother and Father began living together in 2015, and they entered into a civil union in Colorado in 2017. They later moved to Arizona.

¶6            In January 2020, about six weeks before their wedding, Mother and Father signed a premarital agreement ("PMA") prepared by Father's father, which included a term waiving spousal maintenance upon dissolution. Mother was eight months pregnant with their first child at the time. They married in February 2020, on the same day their first child was born. Mother and Father had triplets in June 2023, and Father moved out of the marital residence several months after that.

¶7            In February 2024, Mother petitioned for dissolution. At a temporary orders hearing in March, the court ordered Mother to return a ring that Father had inherited from his mother. She obtained an order of protection soon thereafter but agreed to dismiss it two months later.

¶8            The court held a second temporary orders hearing to address legal decision-making authority, parenting time, child support, and the sale of the marital house. The parties agreed that Mother and the four children could move to Florida where her family lives, and the parties agreed to sell the house after Mother moved. The court scheduled an evidentiary hearing to address the validity of the PMA.

¶9            Mother did not move out of the house on the agreed date, and Father moved for exclusive possession. The superior court held a consolidated hearing on that motion and the validity of the PMA. The court ordered Mother to vacate the house by September 1, 2024, and to reimburse Father for all house-related expenses after August 1, 2024. As to the PMA, the court found that Mother had voluntarily signed the agreement and that it was not unconscionable. The court rejected Mother's claim that the PMA was void because the spousal maintenance waiver resulted in her receiving public assistance, but the court specifically permitted Mother to raise the spousal maintenance issue at trial.

¶10  Mother moved out of the home in September 2024 but did not relocate to Florida. Father moved for temporary legal decision-making authority and parenting time orders the next month, claiming Mother exhibited escalating erratic behavior. He also asked the court to order Mother to undergo a mental health evaluation. Father withdrew his motion for temporary orders at a status conference in November 2024, and the court scheduled a trial for January 7, 2025.

¶11  Mother was hospitalized and did not appear for the January 7 trial. On Father's oral motion, the court granted him sole legal decision-making authority and suspended Mother's parenting time on an emergency basis. The court set an emergency hearing for January 15 and moved trial to January 29.

¶12  At the emergency hearing, the court found that Mother continued to struggle with her mental health and that she had engaged in threatening and improper conduct, noting that Father had an active order of protection against her. The court also affirmed Father's temporary sole legal decision-making authority and the suspension of Mother's parenting time.

¶13  At the January 29 dissolution trial, Father moved to preclude witnesses and exhibits Mother first disclosed one week before the trial. The court denied Mother's oral motion for a continuance and precluded most of her untimely disclosed evidence.

¶14  After trial, the court awarded joint legal decision-making authority and gave Father "presumptive decision-making authority" if the parties were unable to reach an agreement. Based on evidence of Mother's continued mental-health struggles, the court ordered that she have only supervised parenting time. The court also ordered Mother to undergo a "forensically-informed psychiatric evaluation." The court entered a $0 current child support obligation. And the court denied Mother's request for spousal maintenance, noting her waiver of spousal maintenance under the PMA and finding insufficient evidence to apply the statutory exception to that waiver based on eligibility for public assistance.

¶15  The court also concluded that Mother owed Father $138,861 for multiple reimbursement claims. After accounting for past child support Father owed, the court ordered that the marital residence be sold and that Mother's share of the equity be reduced by $134,051. The court later clarified that Father would continue paying house expenses pending the sale, with Mother's half of those expenses to be deducted from her share of

the equity, and that Mother would be solely responsible for the full cost of her psychiatric evaluation. The decree awarded Father attorney's fees in an amount to be determined after he submitted a fee application.

¶16 The court certified the decree for immediate appeal under Rule 78(b) of the Arizona Rules of Family Law Procedure ("ARFLP"), and Mother timely appealed. The court later awarded Father $35,000 in attorney's fees, but Mother did not file an amended notice of appeal thereafter.

## DISCUSSION

¶17 Mother challenges multiple aspects of the decree and related rulings.[2] She asserts that the court erred by finding the PMA enforceable and by denying her request to override the PMA's spousal maintenance waiver. She further argues that the court erred by precluding her late-disclosed evidence because it was relevant to the children's best interests. Mother also challenges the rulings making her solely responsible for the cost of her psychiatric evaluation and ordering various categories of reimbursement. Finally, she challenges the amount of the attorney's fees award.

## I.     Appellate Jurisdiction.

¶18 To the extent Mother challenges rulings encompassed in the dissolution decree, we have jurisdiction over Mother's timely appeal under A.R.S. § 12-2101(A)(1). Father asserts, however, that we lack appellate jurisdiction over two portions of the appeal because (1) Mother did not timely appeal from the superior court's interlocutory ruling on enforceability of the PMA and (2) Mother did not appeal after the court entered the attorney's fees award.

---

[2] Preliminarily, Father asserts that Mother's opening brief does not properly cite to the record or supporting legal authority as required by ARCAP 13(a)(7), and he asks this court to dismiss the appeal. Noting that the best interests of minor children are at issue, *cf. Hays v. Gama*, 205 Ariz. 99, 102–03, ¶ 18 (2003), we decline to dismiss the appeal and instead address Mother's arguments to the extent possible, but we consider wholly unsupported arguments waived, *see In re Aubuchon*, 233 Ariz. 62, 64–65, ¶ 6 (2013).

### A.   Ruling on the PMA's Enforceability.

**¶19**      Several months before entering the final decree, the superior court ruled that the parties' PMA was entered voluntarily, was not unconscionable, was not void for other reasons, and was thus enforceable. The court signed this ruling and certified it as immediately appealable under Rule 78(b).  Father argues that, because Mother did not appeal at that time, her current appeal is untimely as to that ruling.  *See* ARCAP 9(a) (requiring filing of a notice of appeal no later than 30 days after entry of judgment).  We hold, however, that enforceability of a PMA is not a separate "claim," so the Rule 78(b) certification was improper.  Thus, we may properly review the interlocutory ruling as part of Mother's appeal from the final decree.

**¶20**      As relevant here, this court has appellate jurisdiction to consider an appeal from a "final judgment."  *See* A.R.S. § 12-2101(A)(1).  In a family court matter, the superior court has the discretion to enter a partial final judgment "as to one or more, but fewer than all, claims or parties" in an action presenting "more than one claim for relief" if the court "expressly determines there is no just reason for delay and recites that the judgment is entered under Rule 78(b)."  ARFLP 78(b).  To properly be certified as a partial final judgment under Rule 78(b), the ruling must dispose of at least one claim for relief in a multi-claim action.  *Id.*; *see also Hernandez v. Athey*, 256 Ariz. 530, 532, ¶ 5 (App. 2023) ("Rule 78(b) certification is improper for an unresolved or partially resolved claim.").  Including Rule 78(b) language in an interlocutory ruling that does not dispose of at least one claim does not create an appealable judgment.  *Hernandez*, 256 Ariz. at 532–33, ¶¶ 5, 7 ("Rule 78(b) does not permit appeal of an unresolved claim.").

**¶21**      The enforceability of a PMA is not a separate claim in a dissolution action.  Rather, it is one *issue* the court must decide in addressing the parties' substantive claims for relief—e.g., the overall property allocation or a spousal maintenance determination.  *Cf.* A.R.S. § 25-312 (requiring a dissolution decree to include jurisdictional findings; child-related provisions including legal decision-making, parenting time, and child support if relevant; and "provisions for . . . the maintenance of either spouse and the disposition of property").

**¶22**      Arizona Rule of Civil Procedure 54(b), Rule 78(b)'s civil companion rule, works the same way, which reinforces our analysis.  *See Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304 (App. 1991) (stating that a proper partial final judgment under Civil Rule 54(b) must "dispose of at least one separate claim of a multi-claim action").  Parties are not entitled to

a judgment under Civil Rule 54(b) on legal issues that cut across claims but that are not themselves claims. *Deal v. Deal*, 252 Ariz. 387, 389, ¶ 8 (App. 2021) ("[W]hen a judgment merely disposes of one or more legal theories supporting a claim, 'Rule 54(b) language does not make the judgment final and appealable.'" (quoting *Musa v. Adrian*, 130 Ariz. 311, 313 (1981))). Either party's view of the PMA's enforceability is just such a legal theory cutting across multiple claims but not itself a claim the resolution of which supports a partial final judgment. Rule 78(b), like its Civil Rule counterpart, "did not change the rule against deciding appellate cases in a piecemeal fashion." *Davis*, 168 Ariz. at 304.

**¶23** Father's argument to the contrary is unavailing. He asserts that the enforceability of the PMA is factually distinct enough to qualify as a separate claim because an appellate court would not have to decide the same issue in a subsequent appeal. *See Hernandez*, 256 Ariz. at 532, ¶ 5 ("[A] claim is separate from others remaining to be adjudicated when the nature of the claim already determined is 'such that no appellate court would have to decide the same issues more than once even if there are subsequent appeals.'") (citation omitted). But that rationale would apply to any separately determinable sub-issue even if not an independent claim for relief.[3] The issue of enforceability would necessarily arise in any appeal from the ultimate ruling on claims affected by a PMA (like property allocation or spousal maintenance) precisely because enforceability of a PMA is but one subsidiary issue bearing on those claims. Even if this court could avoid duplicating work (or potentially conflicting rulings) by relying on doctrines such as law of the case, *see, e.g.*, *Flores v. Cooper Tire & Rubber Co.*, 218 Ariz. 52, 57, ¶ 23 (App. 2008), the PMA issue nevertheless remains intertwined with the resolution of the substantive claims for relief.

**¶24** Enforceability of a PMA may be an important issue in dissolution proceedings. And it may, as a practical matter, be dispositive of property or maintenance claims. But there are times that it may not fully resolve those claims. As this case illustrates, even with an enforceable PMA, other property issues may remain to be addressed or an alleged exception to a spousal maintenance waiver may remain to be litigated.

---

[3] For instance, a ruling characterizing property as either separate or community presents different factual issues than the ultimate equitable division, but it is not separately appealable (even if certified under Rule 78(b)) because it does not resolve the property allocation claim. *Cf. Larchick v. Pollock*, 252 Ariz. 364, 366–67, ¶¶ 4, 12–13 (App. 2021) (error to bifurcate rulings on partial property division with dissolution from balance of property allocation).

Until the court takes the next step and fully resolves at least one such claim, Rule 78(b) certification is improper. *See Hernandez*, 256 Ariz. at 533, ¶¶ 7–9 (holding that a determination of entitlement to attorney's fees under A.R.S. § 25-324(A) is one part of the broader attorney's fees claim that also includes the amount of the fee award such that the entitlement decision on its own is not eligible for Rule 78(b) certification).

¶25        Accordingly, we hold that an interlocutory ruling on a PMA's enforceability, without more, resolves an issue but not a claim and thus may not properly be certified as immediately appealable under Rule 78(b). The purported Rule 78(b) certification here was thus improper, so the ruling on enforceability of the PMA was not immediately appealable. Accordingly, Mother may challenge that ruling as part of her timely appeal from the decree itself. *See* A.R.S. § 12-2101(A)(1); *see also* A.R.S. § 12-2102(A) (appeal from final judgment includes review of interlocutory rulings).

### B.    Attorney's Fees Award.

¶26        In the Rule 78(b)-certified decree (from which Mother timely appealed), the superior court granted Father's request for attorney's fees but did not determine the amount to award. The court later entered an attorney's fees award of $35,000 in favor of Father.

¶27        As Father points out, a claim for attorney's fees is not appealable until the court determines both entitlement to fees and the amount of the award. *See Hernandez*, 256 Ariz. at 533, ¶ 8. Mother's appeal from the decree itself (which determined only entitlement and not amount) thus does not confer appellate jurisdiction over the attorney's fees award. *Id.* at ¶ 9. Moreover, although titled "order and judgment," the subsequent attorney's fees award did not include any certification of finality under Rule 78. As far as our record reveals, no proper Rule 78(c) judgment has been entered in this proceeding.[4] We thus lack appellate jurisdiction to consider Mother's challenge to the attorney's fees award and dismiss that part of this appeal. Nothing precludes Mother from appealing the attorney's fees award once an appealable judgment is entered.

---

[4]        We note that the court's ruling on the parties' post-decree motions for reconsideration and clarification cited Rule 78(c) but did not "recite[] that no further matters remain pending" as required.

II.     **Merits Questions.**

     A.     **Premarital Agreement.**

          1.     **Enforceability.**

¶28     Mother argues that the superior court erred by finding the PMA enforceable, asserting that the PMA was unconscionable when entered. She does not challenge the court's finding that she signed the PMA voluntarily. We review unconscionability of a PMA de novo as a question of law. *In re Marriage of Pownall*, 197 Ariz. 577, 580, ¶ 7 (App. 2000).

¶29     If entered voluntarily, a written premarital agreement is enforceable unless the party claiming invalidity shows (1) the PMA was unconscionable when executed and (2) before entering the agreement, that party lacked "a fair and reasonable disclosure" of the spouse-to-be's property and debts, did not "voluntarily and expressly waive" the right to such disclosure, and did not have "adequate knowledge" (whether actual or constructive) of the spouse-to-be's property. A.R.S. § 25-202(C); *see Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 9 (App. 2000).

¶30     To assess unconscionability, we consider "the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party." *Pownall*, 197 Ariz. at 580, ¶ 9 (quoting Uniform Premarital Agreement Act § 6, cmt.). Relevant evidence of "procedural or bargaining unconscionability" includes the lack of independent legal counsel, the "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible." *Id.* at ¶ 10 (quoting *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 89 (1995)). Factors relevant in assessing substantive unconscionability include "contract terms so one-sided as to oppress or unfairly surprise an innocent party" and "an overall imbalance in the obligations and rights imposed by the bargain." *Id.* at 580–81, ¶ 10.

¶31     Here, Mother claims unconscionability because she was unrepresented and less knowledgeable when entering into the agreement, emphasizing that Father's father presented the PMA to the parties at his office at a time when she was eight months pregnant, was unemployed, had little or no money, and was living in Father's father's guesthouse. Although these facts suggest that Father had more bargaining power, other evidence tempered the apparent imbalance. According to Father, the parties took

time to review the PMA, and his father offered to answer any questions. Mother was a college graduate, and she had six weeks after signing the PMA to meet with independent counsel and alter its terms before it became effective on the wedding date. Although Mother asserted that Father's father threatened her (sign the PMA or be thrown out on the street), the superior court credited Father's testimony to the contrary that there were no threats. We defer to the superior court's findings where, as here, reasonable evidence supports them, and we do not reweigh conflicting evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

¶32 Mother next argues that the PMA did not provide a fair and reasonable disclosure of Father's assets because it stated some of Father's assets were difficult to value. The PMA listed four discretionary trusts of which Father was a beneficiary without specifying corresponding values. Because Father's discretionary trust distributions are not guaranteed, his interest was undetermined at that time. And Father testified that his father offered to answer any of Mother's questions when they signed the PMA, but she did not ask for more information. The parties signed the PMA six weeks before the wedding, which provided an opportunity for Mother to seek independent counsel, request additional disclosures from Father, or ask to amend the PMA.

¶33 Moreover, to prevail, Mother would also have to show that she did not waive the right to additional financial disclosure. *See* A.R.S. § 25-202(C)(2)(b). The PMA, however, includes a provision expressly waiving the right to any disclosure beyond that already provided. This voluntary and express written waiver defeats her claim that the PMA is unenforceable. *See id.*

¶34 Accordingly, we affirm the superior court's ruling finding the PMA enforceable.

### 2. Spousal Maintenance Waiver.

¶35 The PMA included a term waiving each party's right to claim spousal maintenance upon dissolution. Mother argues that the superior court erred by enforcing the waiver because she is a stay-at-home parent for four young children and thus unable to work, meaning that, absent spousal support, she requires public assistance to make ends meet. We construe de novo the statute authorizing non-enforcement of a spousal maintenance waiver under certain circumstances. *See Vera v. Rogers*, 246 Ariz. 30, 33, ¶ 11 (App. 2018).

¶36        Arizona's version of the Uniform Premarital Agreement Act permits a court to override a spousal maintenance waiver if that term causes one party to be eligible for public assistance:

> If a provision of a premarital agreement modifies or eliminates spousal support and that modification or elimination causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the agreement, may require the other party to provide support to the extent necessary to avoid that eligibility.

A.R.S. § 25-202(D).  Once the requesting party shows eligibility for public assistance, the court should generally determine whether, absent the waiver, that party would be eligible for and entitled to spousal maintenance under the Arizona Spousal Maintenance Guidelines.  *See* A.R.S. § 25-319 app. ("Guidelines") § I.D; *see also* A.R.S. § 25-319(A) (criteria making a spouse eligible to receive spousal maintenance), (B) (considerations relevant to duration and amount of an award).  The requesting party must then show what amount of support is necessary to avoid eligibility for public assistance.  *See* A.R.S. § 25-202(D).

¶37        The Guidelines-determined amount and duration provide the maximum possible award.  *See* A.R.S. § 25-319(B) (absent deviation, Guidelines amount determines the award).  But the court may order a lesser award under § 25-202(D) if a smaller amount is sufficient to make the requesting spouse ineligible for public assistance.  *See* A.R.S. § 25-202(D) (authorizing an award "to the extent necessary to avoid th[e] eligibility" for public assistance).  And even if the requesting party makes all required showings, the court has discretion, after considering the parties' circumstances, to decline to override the waiver.  *See* A.R.S. § 25-202(D) ("[A] court, notwithstanding the terms of the agreement, *may* require the other party to provide support . . . .") (emphasis added).

¶38        Here, Mother testified at trial that she received public assistance in the form of Supplemental Nutrition Assistance Program (SNAP) benefits, Women, Infants, and Children (WIC) benefits, and child care assistance benefits.  She explained that, although she had a bachelor's degree, she was unable to work because of the need to care for the children.

¶39        But by the time of trial, Mother no longer had custody of the children.  This change undermined Mother's only stated rationale for not

11

working to support herself. It also undercut her assertion of eligibility for public assistance. Child care and WIC benefits were provided for the children and thus were not a basis showing *Mother's* eligibility for public assistance at time of trial. Even nutrition assistance benefits depend, in part, on household size. *See* 7 U.S.C. § 2012(m)(1); 7 C.F.R. §§ 273.1, .10(e)(2)(ii)(A), (4), 271.2. Because Mother offered no evidence of eligibility for public assistance when she no longer had custody of the children, she failed make the requisite first showing for application of § 25-202(D).

¶40 Moreover, Mother offered no evidence of how much spousal maintenance would be necessary to avoid eligibility (if any) for public assistance. As the superior court here found, Mother thus did not meet her burden to justify overriding the PMA's spousal maintenance waiver. We thus affirm the superior court's denial of relief under § 25-202(D).[5]

## B. Evidentiary Rulings.

¶41 The superior court precluded one of Mother's witnesses from testifying at trial and precluded several exhibits because they were not timely disclosed. Mother argues that the court erred by doing so because the evidence was relevant to determining children's best interests. *See Hays v. Gama*, 205 Ariz. 99, 103–04, ¶¶ 21–23 (2003); *Kelly v. Kelly*, 252 Ariz. 371, 375, ¶¶ 18–19 (App. 2021). We review these rulings for an abuse of discretion and will not reverse absent resulting prejudice. *Johnson v. Provoyeur*, 245 Ariz. 239, 241-42, ¶ 8 (App. 2018).

¶42 Mother disclosed several witnesses and exhibits in two supplemental disclosure statements in mid-January 2025, shortly before the trial reset for January 29. This was untimely. *See* ARFLP 49(b)(2)(B), (i) (parties must serve additional disclosures "reasonably in advance of the hearing," and disclose witnesses at least 60 days before trial).

¶43 Mother now argues that her late disclosure was excusable, asserting that legal decision-making authority and parenting time (to which the evidence was directed) were not contested issues until the children were removed from her care by temporary orders issued January 7, 2025. But while the parties had previously agreed that Mother could relocate with the

---

[5] In a related argument, Mother claims the parties' Colorado civil union provides an independent basis to order spousal maintenance notwithstanding the PMA. Because Mother offered no legal authority to support this argument, we deem it waived. *See* ARCAP 13(a)(7) (requiring citations to supporting legal authority); *Aubuchon*, 233 Ariz. at 65–66, ¶ 6.

children to Florida, Father raised these issues in October 2024 when requesting temporary orders granting him sole legal decision-making authority and giving Mother only supervised parenting time. And in early November 2024, the court set trial for January 7, 2025, and ordered the parties to comply with Rule 49 disclosure requirements, making Mother aware that the trial would address legal decision-making authority and parenting time and giving her time to make timely disclosure. She failed to do so. The litigation did not, as Mother argues, change course two weeks before trial, so Mother has failed to show good cause for her untimely disclosures.

¶44 Mother's argument that the court erred by denying her request for a continuance in lieu of preclusion fails for similar reasons. Although she asserts that she needed additional time to prepare to address the now-disputed best interests factors, this issue was raised over two months before trial, not two weeks before trial as Mother suggests.

¶45 The superior court has discretion to impose appropriate sanctions for disclosure violations, including precluding the untimely disclosed evidence. ARFLP 65(b)(1)(B). In family court cases, the court must nevertheless ensure it remains able to consider all factors relevant to the best interests of the children. *See Hays*, 205 Ariz. at 103–04, ¶¶ 21–23; *Kelly*, 252 Ariz. at 375, ¶¶ 18–19. Mother asserts that the preclusion rulings here ran afoul of that mandate.

¶46 Not so. The court properly excluded the untimely disclosed evidence under Rule 65(c) based on the lack of good cause for the late disclosure. *See Johnson*, 245 Ariz. at 243–44, ¶¶ 15–16 (distinguishing preclusion of untimely disclosed evidence under Rule 65 from preclusion as a contempt sanction as in *Hays*, 205 Ariz. at 101, ¶¶ 9–10).

¶47 As to the witnesses specifically, Mother wanted to present testimony from a friend and from her father that the children are safe in Mother's care. The preclusion ruling notwithstanding, Mother was able to offer other evidence of her ability to parent, including a report from the children's medical provider. And the court in fact allowed Mother's father to testify on rebuttal, but he was unavailable.

¶48 Moreover, as in *Johnson*, 245 Ariz. at 243–44, ¶¶ 15–16, the superior court here had heard both proposed witnesses testify at the temporary orders hearing two weeks earlier. Mother argues Father was not prejudiced by her late disclosure because he knew the substance of their testimony. But that means the court, too, already knew the substance of

their testimony and, we presume, properly determined that the excluded evidence did not have an "especially significant effect" on its ability to assess the children's best interests. *See id.* at 244, 245, ¶¶ 16, 20.

¶49 Mother does not meaningfully develop her argument about the precluded exhibits on appeal. Although she argues that the court "denied exhibits that showed injuries related to [Father's] domestic violence," she refers only to Exhibits P60 and P61—and the court admitted Exhibit P61, which Mother acknowledged was "a similar picture with injuries." In addition to Exhibit P61, which showed Mother after an alleged domestic violence incident, the court heard other evidence of alleged domestic violence both at the temporary orders hearing and at trial. In light of the other evidence of domestic violence injuries, Mother has not shown the court abused its discretion by precluding Exhibit P60.

## C. Court-Ordered Psychiatric Evaluation.

¶50 The court ordered Mother to undergo a "forensically-informed psychiatric evaluation," follow all recommendations, and take all prescribed medications. The court later added that Mother was responsible for 100% of the cost of the evaluation. Mother argues that the court erred by making her solely responsible for the cost because she has no income.

¶51 The superior court has authority to order mental health services under Rule 95(b). But "[t]he court must determine on the record whether the parties have the ability to pay for services as well as allocate the costs of those services." ARFLP 95(a). Here, the court failed to make the required, on-the-record determination that Mother had the resources to pay for the evaluation. *See Gish v. Greyson*, 253 Ariz. 437, 446, ¶ 42 (App. 2022). Accordingly, we vacate the order requiring Mother to pay 100% of the cost of the psychiatric evaluation and remand for the court to determine the parties' ability to pay and allocate the costs accordingly. *See id.*

## D. Reimbursement Orders.

¶52 Mother argues the superior court erred by ordering her to reimburse Father for various categories of expenses. The court awarded Father $138,861 for multiple reimbursement claims, including (1) more than $30,000 to repair damage to the marital residence, (2) $33,000 for Mother's share of community expenses, and (3) $69,725 for Father's family ring.

¶53 As to repair costs, Mother asserts that she did not cause damage to the marital house. At trial Mother likewise denied damaging the residence, but the superior court found her testimony was not credible.

Father testified and presented exhibits showing the various community expenses and repair costs, which delineated repairs necessary due to damage Mother caused, as well as other normal household repairs and maintenance costs that were divided equally. Although Mother asks us to view the contested evidence differently, the record supports the superior court's assessment. *See Hurd*, 223 Ariz. at 52, ¶ 16.

¶**54** As to Father's family ring, Mother disputes that she retained the ring and asserts that she should not be responsible for its cost. But the court heard and rejected Mother's testimony to that effect. Although Mother asks us to weigh the evidence differently, we defer to the superior court's determination of witness credibility and the weight to give conflicting evidence. *Id.*

¶**55** Finally, Mother asserts that the superior court wrongfully ordered her to pay 100% of the mortgage expenses instead of splitting them as community expenses. But the court in fact divided the bulk of the mortgage payments as community expenses and only ordered that Mother pay 100% for the time she remained in the marital home after she was supposed to have moved out. Contrary to Mother's position on appeal, the court ordered the proceeds from the sale of the house equally divided, so Father was not unfairly given the benefit of the mortgage pay down. Although Mother's reimbursement obligation was ordered to be deducted from her share of the sale proceeds as an equalization payment, the court allocated the home equity equally. Mother has shown no error.

## III. Attorney's Fees and Costs on Appeal.

¶**56** Father requests an award of attorney's fees and costs on appeal under A.R.S. § 25-324 and under ARCAP 25. After considering the parties' financial resources and the reasonableness of their positions, and in an exercise of our discretion, we deny Father's request for a fee award. As the prevailing party on appeal, however, Father is entitled to his taxable costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

## CONCLUSION

¶**57**      We lack jurisdiction to consider the superior court's award of attorney's fees and thus dismiss the appeal in that regard.  We vacate the order requiring Mother to pay 100% of the cost of the psychiatric evaluation and remand for the superior court to comply with Rule 95(a).  We affirm in all other respects.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JR